# EXHIBIT A

ELECTRONICALLY FILED - 2024 Feb 02 11:18 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4200460

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE SEVENTH JUDICIAL CIRCUIT |
| COUNTY OF SPARTANBURG | ) | |
| | ) | |
| TERRIA HOLCOMB, as Personal | ) | Case No. 2024-CP-__-_____ |
| Representative for the Estate of DARIUS | ) | |
| L.J. HOLCOMB | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **SUMMONS** |
| | ) | **(Jury Trial Requested)** |
| SPARTANBURG COUNTY, | ) | |
| SPARTANBURG COUNTY SHERIFF'S | ) | |
| OFFICE, OFFICER WESLEY E. | ) | |
| BENNETT both individually and in his | ) | |
| capacity as a deputy of the | ) | |
| SPARTANBURG COUNTY SHERIFF'S | ) | |
| OFFICE, and CHUCK WRIGHT, in his | ) | |
| capacity as the Sheriff of the | ) | |
| SPARTANBURG COUNTY SHERIFF'S | ) | |
| OFFICE | ) | |
| Defendants. | | |

TO:    THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is served upon you, and to serve a copy of your Answer to this Complaint upon counsel for the Plaintiff, Marvin R. Pendarvis, at 8420 Dorchester Rd. Suite 202, North Charleston, South Carolina 29420, within thirty (30) days after service hereof, exclusive of the day of service. If you fail to answer this Complaint within the aforesaid time, judgment by default shall be rendered against you for the relief demanded in the Complaint.

PENDARVIS LAW, LLC

 s/ *Marvin R. Pendarvis*
Marvin R. Pendarvis, Esq. (#101832)
8420 Dorchester Rd., Suite 202
North Charleston, South Carolina 29420
Phone: (843) 990-9847
Facsimile: (843) 310-6384
marvin@pendarvislawfirm.com

February 2, 2024
North Charleston, South Carolina

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE SEVENTH JUDICIAL CIRCUIT |
| COUNTY OF SPARTANBURG | ) | |
| | ) | |
| TERRIA HOLCOMB, as Personal | ) | Case No. 2024-CP-__-_____ |
| Representative for the Estate of DARIUS | ) | |
| L.J. HOLCOMB | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **(Jury Trial Requested)** |
| SPARTANBURG COUNTY, | ) | |
| SPARTANBURG COUNTY SHERIFF'S | ) | |
| OFFICE, OFFICER WESLEY E. | ) | |
| BENNETT both individually and in his | ) | |
| capacity as a deputy of the | ) | |
| SPARTANBURG COUNTY SHERIFF'S | ) | |
| OFFICE, and CHUCK WRIGHT, in his | ) | |
| capacity as the Sheriff of the | ) | |
| SPARTANBURG COUNTY SHERIFF'S | ) | |
| OFFICE | ) | |
| Defendants. | | |

Comes now the Plaintiff, by and her undersigned counsel below, alleging and complaining of the Defendants who would respectfully show unto this honorable Court:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Terria Holcomb is a citizen and resident of the County of Spartanburg, State of South Carolina.  Additionally, she is the duly appointed Personal Representative of the Estate of Darius Holcomb by Order of the Probate Court of Spartanburg County on June 12, 2023, under case number 2023ES4200943.

2.     Defendant Spartanburg County ("Spartanburg County") is a governmental agency/entity existing under the laws of the State of South Carolina and located in Spartanburg County, South Carolina.  Additionally, these employees were operating within the scope of their officially assigned and/or compensated duties.

3.      Defendant Spartanburg County Sheriff's Office ("SCSO") is a governmental entity organized and existing pursuant to the laws of the State of South Carolina and is located within Spartanburg County.  Additionally, these employees were operating within the scope of their officially assigned and/or compensated duties.  The SCSO is responsible for the policies, practices, and customs of the SCSO as well as the hiring, training, supervision, controlling and disciplining of its deputies and other employees.

4.      Defendant Wesley E. Bennett is believed to be a citizen and resident of the County of Spartanburg, State of South Carolina at the time of the alleged incident.  At all relevant times acting under color of state law and in the course of his duty as employee, agent, officer and/or chief/director for the Spartanburg County Sheriff's Office.

5.      Defendant Chuck Wright is believed to be a citizen and resident of the County of Spartanburg, State of South Carolina at the time of the alleged incident.  At all relevant times acting under color of state law and in the course of his duty as employee, agent, officer and/or chief/director for the Spartanburg County Sheriff's Office.

6.      This case is filed pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. 15-78-10.

7.      Plaintiff is informed and believes that venue is proper in Spartanburg County as a substantial portion of the actions and/or occurrences took place in Spartanburg County.

8.      Plaintiff brings this survival, wrongful death and civil rights action on behalf of the decedent and his heirs and statutory beneficiaries pursuant to S.C. Code Ann § 15-51-90, § 15-5-10, § 15-78- 70, 42 U.S.C. § 1983 and 42 U.S.C. § 1988 as well as the common law of South Carolina.

**ACTS & OCCURRENCES**

9.      Each and every act of negligence, gross negligence, recklessness, and/or willful and wanton conduct by any one or more of the Defendants, and their incorporation into the causes of action set forth *infra,* constitute multiple acts and/or occurrences as may be determined by a jury, under applicable South Carolina law and/or statutes.

**PRELIMINARY STATEMENT**

10.     This action arises out of incidents that took the life of Darius Holcomb on February 2, 2023, which serve as a prime example of Defendants' mistreatment of individuals with mental disabilities.

11.     Darius Holcomb had serious psychiatric disabilities including, but not limited to, schizophrenia, which were known to Defendants, through Spartanburg County and Spartanburg County Sheriff's Office and police officers from their prior interactions with Darius Holcomb and his mother, Ms. Holcomb, on prior dates and most recently on January 27 and January 28, 2023, when officers had attempted to serve an arrest warrant on Holcomb.

12.     Significantly, when "Defendant police officers" (hereinafter defined so as to include both individually named Defendants and any and all other employed police officers of the Defendant Spartanburg County Sheriff's Department and Spartanburg City Police, who were participating in the specific actions and events leading to Holcomb's death) came to the home they were aware that he was not capable of responding mentally to commands from police.

13.     Instead of treating him as an individual with a recognized serious mental health disability, Defendant police officers set up a non-mental health, non-medical plan to arrest Darius Holcomb after removing him from his own bedroom in his own home.

14.     Notwithstanding that police officers knew that Holcomb was having a mental health

crisis, officers utilized S.W.A.T. tactical procedures, ignored offers by Holcomb's mother and sister that they could coax him to come quietly, as they had done on many occasions in the past, they refused to provide him with medical interventions and instead caused him to become further agitated by the use of tear gas, and canine police dogs, before firing five (5) shots, hitting him four (4) times, killing him.

15. As stated by one of the officers on the scene, Deputy Sean Coats derisively referred to the action that they were about to take as regards Darius Holcomb "So if no more fun ways to get him ... I'll try that."

16. Defendants failed to heed the decision of Spartanburg City command staff to stand down and to not send the TNT. SPD Officers were told they should find an alternative method to arrest Darius Holcomb such as a traffic stop or catch him walking along the road.

17. Defendants failed to follow good and accepted police protocols and other mandatory directives applicable to the circumstances.

18. Defendants and Defendant police officers violated Darius Holcomb's rights under the Fourth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 by using unreasonable and excessive force in attempting to arrest him.

19. Defendants violated Darius Holcomb's rights under the Fourteenth Amendment to the U.S. Constitution by recklessly disregarding his need for emergency psychiatric and medical care and treatment.

20. Defendants' violation of Darius Holcomb's civil rights resulted in his suffering extraordinary conscious pain and suffering, culminating in his wrongful death in the late afternoon hours of February 2, 2023.

21. Defendant police officers acted with a culpable state of mind and intentionally violated relevant mandatory protocols including, but not limited to, mandatory training on

recognizing mental illness and de-escalating confrontations with individuals who are manic, not malicious.

22.    Because of the Spartanburg County Sheriff's Department's gross and reckless conduct, Darius Holcomb was shot within less than five seconds of when the officers breached the doorway to Holcomb's bedroom.

23.    Defendants' and Defendant police officers' conduct in unhesitatingly firing upon Holcomb as they did was so egregious that their acts cannot be regarded as legitimate exercise of judgment or discretion. Rather, they committed ministerial acts in violation of prescribed statutes, legal authority, established procedures and instructions, even though they knew that such violations caused an imminent risk of substantial harm to Mr. Holcomb's life and health.

24.    Upon information and belief, Defendants have a systemic pattern of noncompliance with Crisis Intervention Techniques, failing to provide reasonable accommodations to persons with known or perceived mental health disabilities, needlessly and recklessly escalating situations involving individuals requiring mental health services, using excessive force in such situations, and acting with deliberate indifference in refusing to provide urgent medical or psychiatric care. This pattern of behavior is particularly salient when Defendants respond to people of color having a mental health crisis.

25.    Defendant police officers failed to or improperly trained its agents, servants, employees, and police officers on how to recognize and mitigate unconscious biases against a particular segment of the population—namely Black persons with mental health disabilities. Such failure influenced Defendant police officers' judgments and decisions when interacting with a member of such segment of the population, which resulted in Mr. Holcomb's premature death.

26.    Defendant police officers violated Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and protocols mandated by the

ELECTRONICALLY FILED - 2024 Feb 02 11:18 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4200460

Department of Justice under 28 C.F.R. § 35.130(b)(7) by failing to make reasonable modifications in its policies, practices, or procedures to avoid discrimination based on psychiatric disability during arrest and police investigations.

27.     Defendants violated Mr. Holcomb's rights under ADA, RA, South Carolina Constitution, and Section 1. Chapter 23, Title 23 of the 1976 Code, because they failed to reasonably accommodate Mr. Holcomb's mental health disability, wrongfully attested to arrest him using S.W.A.T. procedures against him for displaying schizophrenic symptoms and caused him to suffer unnecessary injury and indignity on account of their unlawful conduct.

28.     Defendants' actions and omissions were the direct and proximate cause of Mr. Holcomb's death for which Plaintiff Ms. Holcomb, as the Administrator of the Estate of Mr. Holcomb and on her own behalf, now seeks relief including compensatory, exemplary, and punitive monetary damages.

## STATEMENT OF FACTS

29.     Darius Holcomb was born and raised in Spartanburg, South Carolina. As a member of the community, Mr. Holcomb was known by his family, co-workers, and friends. as a harmless but seriously mentally challenged person.

30.     Mr. Holcomb qualified as a disabled person entitled to protection under Title II of the ADA and Section 504 of the RA as he was diagnosed with schizophrenia, and other psychiatric disorders.

31.     Mr. Holcomb started experiencing schizophrenic symptoms as a teenager.

32.     On previous occasions, Mr. Holcomb's mother, Ms. Holcomb and his sister had called 911 to request urgent psychiatric care for him. However, SCSD deputies did not send a psychiatric crisis management team or take Mr. Holcomb to a psychiatric hospital. Instead, Defendants continued to arrest Mr. Holcomb.

33.     On many occasions, Ms. Holcomb and her daughter had been successful in getting Darius to comply with requirements that he meet with his probation officer or other officials simply by talking gently with him and coaxing him to comply.  On past occasions they had been able to assure him that his return home would be quick once he complied with the requests of his probation officer or the courts.

34.     On February 2, 2023, at approximately 3: 10 p.m.., SCSO Deputy Sean Coats, SCSO Deputy Brady Branson, and SCSO Deputy Stephen Clontz responded to the home of Darius Holcomb and his mother Terria Holcomb in Spartanburg, in an attempt to locate Darius Holcomb.

35.     Purportedly, Darius Holcomb had two active warrants for resisting arrest and a bench warrant for failure to appear, issued by the Spartanburg County Magistrate Court.

36.     When the officers arrived, they came into the home without knocking, explaining their reason for being there after confronting Ms. Holcomb's minor grandson who was in the yard.

37.     After entering the home, Darius Holcomb ran into his bedroom, shut the door, and barricaded himself inside the room. Deputies notified dispatch of the situation and additional deputies began responding to the scene.

38.     Ms. Holcomb and her minor child grandson were ordered to leave the home while officers attempted to arrest Darius Holcomb.

39.     Members of the SCSO Specialized Weapons and Tactics (SWAT) Team responded. Attempts were made to communicate with Darius Holcomb to peacefully surrender.

40.     On January 27, 2023, and January 28, 2023, Spartanburg Police Department Officers attempted to serve Darius Holcomb with a bench warrant.  Officer Dylan Davis was present for these encounters with Darius Holcomb on January 27, 2023, and January 28, 2023.

41.     During each attempt Darius Holcomb failed to comply which resulted in a resisting arrest warrant being obtained for each incident by the SPD. Subsequently, SPD Officers requested

the assistance of the SCSO to serve these warrants.

42. Officer Dylan Davis was at all relevant times employed by the SPD and was a K-9 handler. He was also a member of the SPD Tactical Neutralization Team (TNT).

43. Officer Dylan Davis had multiple encounters with Darius Holcomb over the past few years and knew he had a mental health problem.

44. On January 27, 2023, Officer Dylan Davis requested the SPD TNT to respond, but the request was denied.

45. On January 28, 2023, Officer Davis was again present at the Holcomb home seeking to arrest Darius Holcomb.

46. Due to Darius Holcomb's mental state and the decision to leave the residence the previous night, Officer Dylan Davis chose not to force entry and instead left the residence.

47. Officer Dylan Davis then obtained an additional warrant for resisting arrest against Darius Holcomb.

48. The warrant was issued because Darius Holcomb failed to pay a $100.00 fine.

49. On or around January 28, 2023, Officer Logan Bradshaw spoke with Officer Dylan Davis in reference to SPD Officers attempting to arrest Darius Holcomb for an active arrest warrant. The warrant was for alleged violation of the sex offender registry. Officer Dylan Davis explained that officers were told to stand down after Darius Holcomb barricaded himself within his residence.

50. Officer Dylan Davis contacted Sergeant Colegrove, TNT Commander in reference to activation of the TNT to apprehend Darius Holcomb. On January 28, 2023, when contacted, Sergeant Colegrove decided that the TNT would not be called in to apprehend Darius Holcomb.

51. Sergeant Colegrove asked Officer Dylan Davis for additional information and learned that Darius Holcomb was alone in the residence, had mental health issues, and barricaded

ELECTRONICALLY FILED - 2024 Feb 02 11:18 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4200460

himself when officers attempted to serve an older warrant.

52.     Sergeant Colegrove told Officer Dylan Davis that he would not activate the TNT and would contact SPD Maj. Littlejohn (the previous commander for the TNT) about the incident for another opinion.

53.     After Colegrove briefed Maj. Littlejohn, Littlejohn agreed with Colegrove's decision. Sergeantt Colegrove then told Officer Dylan Davis that Maj. Littlejohn agreed with Sgt. Colegrove's decision to not deploy the TNT.

54.     Major Littlejohn's thought process for agreeing with Sergeant Colegrove's decision was that a call out of the TNT would have introduced chemical agents into the residence. In the process of apprehending Holcomb, there would have been damage to the residence. Holcomb was inside the residence and had possible mental health issues. Based on what Holcomb was wanted for, because of mental health issues it would not be justified in response by the TNT to apprehend Holcomb. Maj. Littlejohn also weighed these factors with the safety of officers and unnecessarily placing officers at risk. Maj. Littlejohn believed that officers would be able to find a better way to apprehend Darius Holcomb without the use of the TNT.

55.     Notably, Sergeant Colegrove was contacted by Officer Davis on both January 27 and January 28 regarding deploying the TNT to apprehend Darius Holcomb.

56.     On January 28, 2023, Officer Dylan Davis called Sgt. Colegrove a second time regarding Darius Holcomb again barricading himself inside the residence.

57.     Colegrove asked Officer Davis what circumstances were different from the previous encounter. Officer Davis told Sgt. Colegrove he had obtained a resisting arrest warrant.

58.     Sergeant Colegrove once again told Officer Dylan Davis the TNT would not respond.

59.     Lieutenant Leslie McDonald spoke with Officer Davis after learning that Davis was

not happy about the decision made by command staff to not activate the TNT.

60.     Lieutenant McDonald told Officer Davis that failure to pay fines did not warrant a response by the TNT which would risk injury to officers and Darius Holcomb, who was known to have mental issues.

61.     On January 29, 2023, at approximately 8:33 a.m., Officer Dylan Davis sent Deputy Coats a text message. The message read: Hey man, we're having an issue getting Darius Holcomb in custody this weekend. We've signed two resisting arrest warrants. He continues to barricade himself and we are getting stood down for forcible entry due to his mental state and the severity of the original warrant. If you get him in custody let me know please. If not, I'm going to work on it when I come back to work Wednesday."

62.     Deputy Coats replied, "He's always gave trouble. I'll work on him tomorrow." Deputy Coats continued, "I have however talked mom into having sister turn him in to me last time" followed by "So if no more ***fun ways to get him*** ... I'll try that." Officer Dylan Davis replied, "Tried that yesterday."

63.     On February 2, 2023, at approximately 7:28 a.m., Officer Bradshaw sent Deputy Coats a text message. The message read, "Davis went out again on the 28th and tried to get him, ended up signing another resisting ... "

64.     Deputy Coats replied, "Yup" and "He called me bout [sic] it's." Deputy Coats continued, "Is he working today? Y'all wanta [sic] all go out with me and get him?"

65.     Officer Bradshaw replied, "He'll be in at 2, but he'd probably come in earlier to snag him up. If the city takes "lead" on it tho [sic] we'll get called off. Seems like mom is willing to work with us tho [sic]."

66.     Deputy Coats replied, "Let's do it at 2:30. I'll 'take the lead'."

67.     On February 2, 2023, members of the Spartanburg County Sheriff's Department

SWAT team were deployed to the Holcomb home in order to arrest him despite the fact that the SPD had on at least three occasions over the preceding week refused to authorize such military style tactics.

68.     There was no "knock" or "announcement" made by Defendant Officers or the subsequent responding sheriff's deputies.

69.     SCSO SWAT Commander, Lt. Anthony Hawkins, instructed deputies to deploy chemical munitions into the bedroom in an attempt to force Darius Holcomb out.

70.     After a period of time, Darius Holcomb failed to exit.

71.     Lieutenant Hawkins then instructed deputies to deploy additional chemical munitions.

72.     Again, Darius Holcomb failed to exit.

73.     Lieutenant Hawkins decided the bedroom would be breached by deputies and a patrol service dog (PSD) would be deployed into the room.

74.     Deputy Coats breached the bedroom door and Deputy Shane Shehan deployed PSD, K-9 Atlas, into the bedroom. K-9 Atlas attacked Darius Holcomb causing Holcomb to struggle in order to protect himself from further attack. Police body camera still shots show that the K-9 was deployed at **17:50**.

75.     Three (3) seconds later, according to police body camera still shots show that at **17:53** after the door to Darius Holcomb's bedroom was breached, and while Holcomb was being attacked by the K-9, SCSO Sergeant Wesley Bennett discharged his department issued service weapon (Shadow System XR920 semi-automatic handgun, 9x19mm caliber, serial number, five (5) times, striking Darius Holcomb four (4) times).

76.     Darius Holcomb immediately fell to the ground. Deputies entered the bedroom and moved Darius Holcomb into the living room.

77. EMS arrived on scene and subsequently pronounced Darius Holcomb deceased.

78. At no point did Mr. Holcomb pose an immediate threat to the deputies or any K9.

79. At no point did deputies attempt to solicit the use of a mental health professional, despite knowing Mr. Holcomb's condition and the prior history with him.

80. The use of force by Defendant SCSO deputies was excessive and objectively unreasonable.

81. The acts and omissions of all Defendants as set forth herein were at all times pursuant to the actual customs, policies, practices and procedures of the Spartanburg County Sheriff's Office.

82. The Defendant officers were deliberately indifferent to the mental distress to Holcomb, already schizophrenic, having been in contact with tear gas, and being physically attacked by a K-9.

83. No officer on scene intervened to keep Officer Bennett from firing five shots at Holcomb while he was mentally and physically distressed and not causing any threat of harm to any officer.

### COUNT ONE
### 42 U.S.C. § 1983-Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution (As to Defendant Police Officers)

84. Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

85. The Defendant Police Officers, separately and in concert, engaged in the unlawful aforementioned conduct, injuring and depriving Plaintiff of the rights, privileges and immunities secured to him by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution as well as the South Carolina Constitution and statutes.

86. The Defendant Police Officers violated the Plaintiff's rights secured to him by 42 U.S.C. § 1983, in one or more of the following ways:

13

a.      In stopping and restraining him without reasonable suspicion, probable cause, or other exigent circumstances;

b.      In using unreasonable, unjustified and excessive force upon him;

c.      In acting jointly and in concert with each other when they had a duty and opportunity to protect him from the unlawful acts of the other officers;

d.      In using cruel and unusual punishment on him;

e.      In causing unjust and unwarranted physical abuse, intimidation and humiliation to him;

f.      f. In unjustly depriving him of rights without due process of law;

g.      In acting recklessly toward him resulting in his death.

87.      As a result of Defendants' conduct, Plaintiff has suffered personal injuries, including physical injury, severe emotional distress, and shock to his entire system and ultimate death.

88.      In the manner described above, the defendants violated Plaintiff's right to be free from unreasonable force in the course of an arrest all of which rights are guaranteed by the Fourth Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code.

89.      In the manner described above, the Defendants Police Officers were deliberately indifferent to Plaintiff in violation of the Fourth and Fourteenth Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code.

90.      Plaintiff was damaged thereby.

## COUNT TWO
### 42 U.S.C. §1983/Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution
### (Spartanburg County Sheriff's Department)

91.      Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

14

92.     At all material times mentioned herein, Defendant SCSO as the final policy maker in the area of law enforcement, had in effect, policies, practices, and customs regarding Police Officers.

93.     These policies, practices, and customs included, but are not limited to:

a.      the failure to properly screen, train, discipline, supervise or otherwise control police officers as regards the use of excessive unreasonable and unjustified force, including the use of tear gas on mentally incompetent individuals who present no threat of harm; and

b.      the duty of officers to intervene and protect individuals from the deprivation of their civil rights by other police officers.

94.     These actual and/or de facto policies, practices and customs were the proximate cause of the conduct of Defendant Police Officers and the resulting death of Plaintiff.

95.     The Defendant, SCSO, was deliberately indifferent in the supervision, discipline, and investigation of the individual Defendants thus ratifying, promulgating and approving of the unlawful behaviors.

96.     As a consequence of the policies, practices and customs Plaintiff has suffered physical and emotional distress, injury and death.

### COUNT THREE
### Title II of the Americans with Disabilities Act ("ADA")

97.     Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

98.     Upon information and belief, the Defendants have a systemic pattern of non-compliance with Crisis Intervention Training ("CIT"), failing to provide accommodations under the ADA, escalating situations involving individuals requiring mental health services, using excessive force in such situations, and acting with deliberate indifference by violating South

ELECTRONICALLY FILED - 2024 Feb 02 11:18 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4200460

Carolina Statutes requiring police officers to recognize mental health crisis in individuals and to de-escalate in such situations.

99.     Defendants violated the ADA because they failed to reasonably accommodate Mr. Holcomb's mental health disability, wrongfully attempted to arrest him for displaying schizophrenic symptoms, and caused him to suffer unnecessary injury, indignity and ultimate death on account of their unlawful conduct.

100.     Defendant Police officers and SCSD thereby violated the rights of Darius Holcomb.

## COUNT FOUR
## Section 504 of the Rehabilitation Act ("RA")

101.     Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

102.     The SCSO policies and customs of treating mental health calls identical to criminal response calls, such as those not involving people with mental disabilities, violated Mr. Holcomb's civil rights under the RA.

103.     The Defendants violated Mr. Holcomb's rights when they failed to follow South Carolina CIT training, which amplified Mr. Holcomb's schizophrenic symptoms. The Officers directly contributed to Mr. Holcomb's psychiatric condition by throwing tear gas multiple times into his bedroom, being aggressive, deploying a K-9 into his bedroom and failing to deescalate the situation.

104.     The Defendants violated Mr. Holcomb's civil rights under the RA by failing to adequately train Officers to make reasonable accommodations for persons suffering or perceived to be suffering from mental illness or disabilities when they are arrested or taken into custody.

105.     The Defendants violated Mr. Holcomb's civil rights by wrongfully attempting to arrest him because they were indifferent to, and failed to accommodate, his disability, wrongfully characterizing his conduct as criminal activity, amongst other things.

ELECTRONICALLY FILED - 2024 Feb 02 11:18 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4200460

106.     Upon information and belief, the Defendant's violated Mr. Holcomb's civil rights under the RA by failing to conduct a self-evaluation of its existing policies and procedures to ensure that they were RA compliant, and that failure caused his injuries.

107.     As a result of the aforementioned violation, Mr. Holcomb suffered pain and suffering, emotional distress, and catastrophic injuries, including wrongful death.

**COUNT FIVE**
**Negligence/Gross Negligence (As to Defendant Officers)**

108.     Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

109.     The Defendants all departed from the duties of care required by law enforcement officers and the agencies that hire, train and employ these officers and were thereby negligent, careless, grossly negligent, reckless and acted in violation of the duties owed to Darius Holcomb in that they committed one or more of the following acts of omission or commission, any or all of which were departures from the prevailing duties of care:

h.     In failing to ensure the safety of Mr. Holcomb;

i.     In failing to appreciate the conditions that existed on the night in question when suing such force and otherwise discharging deadly weapons without cause;

j.     In failing to adhere to proper law enforcement procedures when serving search warrants;

k.     In failing to use alternative less violate and/or lethal methods of executing a warrant;

l.     In failing to have in place proper and adequate policies, procedures and protocols for law enforcement officers serving warrants or, if such policies, procedures and protocols were in place, in failing to use due care to enforce them;

m.     In failing to have in place proper and adequate policies, procedures and protocols

17

serving warrants and/or using deadly force or, if such if such policies, procedures and protocols were in place, in failing to use due care to enforce them;

n.　　　In failing to properly train and educate their employees or, if properly trained or educated, in failing to allow their employees to exercise independent judgement and care; and

o.　　　In such other particulars as may be ascertained through discovery procedures undertaken pursuant to South Carolina Rules of Civil Procedure.

110.　　As a result of the aforementioned violations, Mr. Holcomb suffered pain and suffering, emotional distress, and catastrophic injuries, including wrongful death.

## COUNT SIX
### Assault and Battery (As to Defendant Officers)

111.　　Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

112.　　Defendant Officers' contact with Plaintiff was a harmful and offensive contact with his physical person and, moreover, was carried out in such a manner as to ensure that Plaintiff experienced offense to his reasonable sense of personal dignity.

113.　　Defendants' contact caused undue physical impairment to Plaintiff's body and caused physical pain and suffering. The contact was the direct and immediate consequence of the force exerted by Defendant Police Officers.

114.　　Defendant Police Officers' conduct in contacting Plaintiff was intentional, wanton, malicious and without the exercise of due care.

115.　　Plaintiff Darius Holcomb was damaged thereby.

## COUNT SEVEN
### Intentional Infliction of Emotional Distress (As to Defendant Officers)

116.　　Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

117.    Defendant Police Officers engaged in the extreme and outrageous conduct of committing an unprovoked assault and battery upon Plaintiff which was particularly cruel in nature.

118.    The Defendant Police Officers' conduct was intended to cause and did cause Plaintiff severe emotional distress.

119.    As a result of Defendant Police Officers' actions, Plaintiff has sustained and will in the future suffer extreme emotional distress.

120.    Plaintiff has been damaged thereby.

**COUNT EIGHT**
**Negligent Infliction of Emotional Distress (As to Defendant Officers)**

121.    Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

122.    The conduct of Defendant Police Officers was negligent in that they knew or should have known that emotional distress was the likely result of their conduct.

123.    As a result of the conduct of Defendant Police Officers, Plaintiff has suffered severe emotional distress. She is likely to suffer severe emotional pain and suffering in the future.

124.    Plaintiff has been damaged thereby sustaining past, present and future pain and suffering, both physical and emotional; and past, present and future psychological trauma and impairment.

**COUNT NINE**
**Wrongful Death (Under S.C. Code § 15-51-10, *et. seq*)**

125.    Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

126.    This action is brought for the wrongful death of Darius Holcomb, pursuant to the provisions of § 15-51-10 et seq., Code of Laws of South Carolina (1976, as amended), as is brought for any statutory heirs of Daris Holcomb, who died on February 2, 2023.

ELECTRONICALLY FILED - 2024 Feb 02 11:18 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4200460

ELECTRONICALLY FILED - 2024 Feb 02 11:18 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4200460

127.     The death of the Decedent was caused and occasioned by the grossly negligent acts on behalf of the Defendants as set forth above.

128.     Prior to his death, Darius Holcomb was thirty-nine (39) years of age. By reason of his untimely death, his heirs have been deprived of all the benefits of his society and companionship and have been caused great mental shock and suffering by reason of his death. They have and will forever be caused grief and sorrow by the loss of Mr. Holcomb's love, society, and companionship. They have been deprived of his future experiences and judgments. They have incurred expenses for his funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

a.     mental shock and suffering;

b.     wounded feelings;

c.     grief and sorrow;

d.     loss of support;

e.     loss of companionship; and

f.     deprivation of the age and comfort of the Decedent's society and loss of his experience, knowledge, and judgment.

129.     As a further result, and because of the Defendants' reckless, willful, and grossly negligent conduct, which ultimately caused the wrongful death of Darius Holcomb, the Plaintiffs are entitled to ACTUAL and CONSEQUENTIAL damages in an amount to be determined by a jury in accordance with the law and evidence in this case.

## COUNT TEN
### Survival

130.     Plaintiffs reallege the preceding paragraphs as though set forth verbatim herein.

131.    This action is brought for the wrongful death of Darius Holcomb, pursuant to the provisions of § 15-51-10 et seq., Code of Laws of South Carolina (1976, as amended), as is brought for any statutory heirs of Daris Holcomb, who died on February 2, 2023.

132.    The death of the Decedent was caused and occasioned by the grossly negligent acts on behalf of the Defendants as set forth above.

133.    Prior to his death, Darius Holcomb was thirty-nine (39) years of age. By reason of his untimely death, his heirs have been deprived of all the benefits of his society and companionship and have been caused great mental shock and suffering by reason of his death. They have and will forever be caused grief and sorrow by the loss of Mr. Holcomb's love, society, and companionship. They have been deprived of his future experiences and judgments. They have incurred expenses for his funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

g.    mental shock and suffering;

h.    wounded feelings;

i.    grief and sorrow;

j.    loss of support;

k.    loss of companionship; and

l.    deprivation of the age and comfort of the Decedent's society and loss of his experience, knowledge, and judgment.

134.    As a further result, and because of the Defendants' reckless, willful, and grossly negligent conduct, which ultimately caused the wrongful death of Darius Holcomb, the Plaintiffs are entitled to ACTUAL and CONSEQUENTIAL damages in an amount to be determined by a jury in accordance with the law and evidence in this case.

ELECTRONICALLY FILED - 2024 Feb 02 11:18 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4200460

**Prayer for Relief**

**WHEREFORE**, the Plaintiff, individually, and in her fiduciary capacity as the personal representative of the Estate of Darius Holcomb, prays that this Court issue an order in favor of Plaintiff and against the Defendants, jointly and severally, awarding to Plaintiffs actual, special, punitive and/or consequential damages, and for such other relief in law or equity as this court deems just and proper, including but not limited to any costs resulting from this action.

FOR THE PLAINTIFF

PENDARVIS LAW, LLC

*s/ Marvin R. Pendarvis*

Marvin R. Pendarvis, Esq. #101832
8420 Dorchester Rd. Ste. 202
North Charleston, SC 29420
Phone: (843) 990-9847
Facsimile: (843) 310-6384
marvin@pendarvislawfirm.com

This 2nd day of February, 2024
North Charleston, South Carolina