IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | | |
|---|---|---|
| TERRIA HOLCOMB, as Personal Representative for the ESTATE OF DARIUS L.J. HOLCOMB, | ) ) ) | Civil Action No.: 7:24-cv-1145-JDA-KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT** |
| | ) | |
| SPARTANBURG COUNTY, SPARTANBURG COUNTY SHERIFF'S OFFICE, OFFICER WESLEY E. BENNETT, SHERIFF CHUCK WRIGHT, CITY OF SPARTANBURG, DYLAN DAVIS, and SEAN JACOB COATS, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, Terria Holcomb, as Personal Representative of the Estate of Darius L.J. Holcomb, complaining of the above-named Defendants, would respectfully show unto the Court the following:

**PARTIES, JURISDICTION, AND VENUE**

1.       Plaintiff Terria Holcomb is the duly appointed Personal Representative of the Estate of Darius L.J. Holcomb by Order of the Probate Court of Spartanburg County dated June 12, 2023, case number 2023ES4200943.

2.       The City of Spartanburg is a municipality that exists under the laws of the State of South Carolina.  At all times relevant, the City of Spartanburg acted and carried on its business by and through its agents, departments, servants, and/or employees, including through one of its public safety departments, the Spartanburg Police Department, and its law enforcement officers.

Additionally, during the time period set forth in the Complaint, these servants and/or employees were operating within the course and scope of their officially assigned and/or compensated duties.

3.     Upon information and belief, the Spartanburg Police Department ("SPD") is a wholly-controlled and operated department of Defendant City of Spartanburg.  Additionally, the Spartanburg Police Department is a law enforcement agency and, as such, is operated by people charged with enforcing the various laws enacted by the State of South Carolina and is responsible for promulgating the policies, practices, and customs of the SPD as well as for the hiring, training, supervision, controlling and disciplining of its officers and other employees.  During the time period set forth in this Complaint, SPD employees were acting in the course and scope of their officially assigned and/or compensated employment and duties except as otherwise alleged.

4.     Upon information and belief, Spartanburg Police Department officers are employees of Defendant City of Spartanburg.

5.     Upon information and belief, at all times relevant, Defendant Dylan Davis was employed by the City of Spartanburg as a Spartanburg Police Department law enforcement officer, and is a citizen and resident of Spartanburg County, South Carolina.  At all times relevant, Defendant Davis was acting under color of state law and in the course and scope of his employment as an officer with the Spartanburg Police Department and/or with actual malice or intent to harm Mr. Holcomb.

6.     Upon information and belief, Defendant Spartanburg County Sheriff's Office ("SCSO") is a county-level governmental entity organized and existing pursuant to the laws of the State of South Carolina (as defined by Section 15-78-10 of the Code of Laws of South Carolina (1985), as amended) and is located within Spartanburg County. At all times relevant, upon

2

information and belief, the Spartanburg County Sheriff's Office was budgeted, funded, insured, and controlled by Spartanburg County.

7.     The SCSO is a law enforcement agency and, as such, operates through its agents charged with enforcing the various laws enacted by the State of South Carolina and with Spartanburg County is responsible for promulgating the policies, practices, and customs of the SCSO as well as for the hiring, training, supervision, controlling and disciplining of its deputies and other personnel. During the time period set forth in this Complaint, SCSO law enforcement officers were acting in the course and scope of their officially assigned and/or compensated employment and duties except as otherwise alleged herein.

8.     Upon information and belief, Defendant Chuck Wright is a citizen and resident of Spartanburg County. At all times relevant, Defendant Wright acted under color of state law and in the course and scope of his duty as Sheriff of Spartanburg County and as the head of the Spartanburg County Sheriff's Office. The claims against Defendant Wright are brought against him in his official capacity as Sheriff.

9.     Defendant Spartanburg County is a political subdivision existing under the laws of the State of South Carolina that, at all times relevant, acted by and through its agents, servants, and/or employees, including upon information and belief, law enforcement officers with the SCSO. Spartanburg County, by law, including S.C. Code § 4-1-80, budgets for and pays for the operations of the SCSO for the benefit and public safety of the citizens of the Spartanburg County, including Darius Holcomb.

10.     Upon information and belief, at all times relevant, Defendant Sean Jacob Coats was employed by Spartanburg County and/or the Spartanburg County Sheriff's Office as a deputy sheriff law enforcement officer, and is a citizen and resident of Spartanburg County, South

Carolina.  At all times relevant, Defendant Coats was acting under color of state law and in the course and scope of his employment as a deputy with the Spartanburg County Sheriff's Office and/or with actual malice or intent to harm Mr. Holcomb.

11.     Upon information and belief, at all times relevant, Defendant Wesley E. Bennett, was employed by Spartanburg County and/or the Spartanburg County Sheriff's Office as a deputy sheriff law enforcement officer, and is a citizen and resident of Spartanburg County, South Carolina.  At all times relevant, Defendant Bennett was acting under color of state law and in the course and scope of his employment as a deputy with the Spartanburg County Sheriff's Office. The claims against Defendant Bennett are brought against him in his individual capacity and in his capacity as a law enforcement officer with the Spartanburg County Sheriff's Office.

12.     That the separate and distinct acts and occurrences that give rise to this Complaint occurred in Spartanburg County, South Carolina.

13.     The state law claims against City of Spartanburg, Spartanburg County, Sheriff Wright, and Spartanburg County Sheriff's Office are filed pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10.

14.     Venue is proper in this division under Local Civil Rule 3.01(A)(1) as a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred within Spartanburg County, South Carolina.

15.     This Court has personal jurisdiction over the parties hereto and subject matter jurisdiction over the claims asserted herein because the most substantial acts and omissions giving rise to liability occurred within Spartanburg County, South Carolina.

## FACTUAL BACKGROUND

16.     Darius Holcomb was born and raised in Spartanburg, South Carolina. As a member of the community, Mr. Holcomb was known by his family, co-workers, and friends as a harmless but seriously mentally challenged person.

17.     At the time of his death, Mr. Holcomb was 39 years old.

18.     Mr. Holcomb had been diagnosed with schizophrenia and other psychiatric disorders beginning when he was a teenager.

19.     Mr. Holcomb's mental illness rendered him disabled.

20.     Prior to the events leading to his death, Mr. Holcomb's family members had on occasion called emergency services to request urgent psychiatric care for him.

21.     On August 18, 2021, a detention order for Mr. Holcomb was issued by the Spartanburg County Probate Court.  The order found that Mr. Holcomb lacked sufficient insight or capacity to make responsible decisions for his own mental health treatment.  The court ordered Mr. Holcomb to receive in-patient mental health treatment at the Spartanburg Medical Center, Mary Black Campus.

22.     Mr. Holcomb attended treatment and subsequently moved home with his mother, Terria Holcomb.  He was living at home and on probation from a conviction that occurred when he was a young man.  Accordingly, from time to time he had to check in with a probation officer.

23.     On many occasions, Mr. Holcomb's family had been successful in getting him to comply with requirements that he meet with his probation officer or other officials simply by talking gently with him and coaxing him to comply.  On past occasions they had been able to assure him that his return home would be quick once he complied with the requests of his probation officer or the courts.

5

24.     At all times relevant, Mr. Holcomb's severe psychiatric disabilities, including his schizophrenia, were known to Defendants based on their prior interactions with him.

25.     On January 26, 2023, a bench warrant was issued to Mr. Holcomb for a first offense of failing to comply with one of his probation requirements, which according to the Spartanburg Police Department was issued because he failed to pay a $100 fine.

26.     Thereafter, on January 27, 2023 and January 28, 2023, Spartanburg Police Department ("SPD") officers, including Defendant Officer Dylan Davis, attempted to locate Mr. Holcomb at his residence to serve him with the bench warrant.

27.     On both occasions, Mr. Holcomb was experiencing a mental health breakdown at his home due to not taking his medication and declined to come outside for the bench warrant.

28.     On January 27, 2023, SPD Officer Dylan Davis requested that the Spartanburg Police Department's Tactical Neutralization Team ("TNT") respond to Mr. Holcomb's residence to serve the minor bench warrant on him after he declined to come outside to meet with Davis.

29.     TNT is a team akin to a SWAT team that intervenes in deadly and high-risk situations, such as armed hostage situations and active shooter situations.

30.     At the time Defendant Davis made the request for the TNT to show up, upon information and belief, Defendant Dylan was aware that Mr. Holcomb was experiencing a mental health breakdown.

31.     Generally accepted police practices in South Carolina and elsewhere call for a different response when police officers encounter an individual suffering from a mental health crisis, such as taking steps to calm (not escalate) the situation, assuming a quiet and non-threatening manner when approaching or conversing with the individual, explain that police are there to provide help, to communicate with the individual about their concerns and allay them, and

6

to request the appropriate assistance from experts such as from South Carolina's branch of the National Alliance on Mental Illness (NAMI), which is an organization that trains police officers on how to interact with mentally ill individuals and that responds to the scene of police encounters with individuals suffering from a mental health crisis to help resolve law enforcement encounters safely.

32.    Defendant Davis's request for the Tactical Neutralization Team to respond to Mr. Holcomb's residence to serve the minor bench warrant, however, was repeatedly denied by his chain of command on scene and by senior leadership within the Spartanburg Police Department, because the circumstances did not justify use of TNT at Mr. Holcomb's residence to serve a minor bench warrant.

33.    Specifically, the on-duty Watch Commander, Lt. Leslie McDonald, denied Davis's request for the Tactical Neutralization Team to respond to Mr. Holcomb's residence.

34.    Upon information and belief, Defendant Davis was dissatisfied with his Watch Commander's order and directly called the Commander of the Tactical Neutralization Team, Sgt. Justin Colegrove.

35.    Defendant Davis told Sgt. Colegrove that he was outside of Mr. Holcomb's home with a warrant, that Mr. Holcomb was purportedly "armed" with an undescribed weapon, and requested that the Tactical Neutralization Team meet them at Mr. Holcomb's home to serve the minor bench warrant.

36.    Upon information and belief, officers at the scene did not see Mr. Holcomb with a knife or other weapon and never threatened officers.

37.    Sgt. Colegrove asked Defendant Dylan Davis for additional information and then learned that Mr. Holcomb was alone inside his residence, had mental health issues, and barricaded himself inside when officers approached to serve the bench warrant.

38.    Sgt. Colegrove told Defendant Davis that he would not activate the Tactical Neutralization Team to respond given the circumstances.

39.    Sgt. Colegrove then communicated with his supervisor, Major Arthur Littlejohn, who had previously served as Commander of the Tactical Neutralization Team, regarding Defendant Davis's request to active the Tactical Neutralization Team to Mr. Holcomb's house to serve the minor bench warrant.

40.    Major Littlejohn agreed with Sgt. Colegrove's decision not to active the Tactical Neutralization Team to Mr. Holcomb's residence.

41.    Sgt. Colegrove then called Defendant Davis on the phone and informed him that Major Littlejohn agreed with his decision not to activate the Tactical Neutralization Team to Mr. Holcomb's residence.

42.    After speaking with Defendant Davis, Sgt. Colegrove called the on-duty Watch Commander, Lt. Leslie McDonald, inquiring about Defendant Davis's direct phone call to him to activate the Tactical Neutralization Team to respond to Mr. Holcomb's residence.

43.    Lt. McDonald told Sgt. Colegrove that Defendant Davis had earlier requested the Tactical Neutralization Team and was denied by his chain of command.

44.    Sergeant Brandy Edwards, an SPD supervisor working on January 27, 2023, spoke with officers at the scene of Mr. Holcomb's residence and they agreed to leave the scene without further police action.

45. Sgt. Edwards met with officers afterward for a debriefing. During the debrief, Sgt. Edwards explained the circumstances around the warrant which led to the decision to leave Mr. Holcomb's residence without further escalation.

46. Dissatisfied, Defendant Davis told Sgt. Edwards he would speak with a judge in reference to Mr. Holcomb's actions that evening.

47. The following day, January 28, 2023, upon information and belief, Defendant Davis stated that he was not happy with the decision made by SPD command staff to not activate the TNT to Mr. Holcomb's residence.

48. Defendant Davis said that he wanted the TNT to come out to Mr. Holcomb's residence and stay as long as necessary to serve the warrant because "leaving sent the wrong message to suspects."

49. Lt. McDonald approached Defendant Davis and told him that the failure to pay fines did not warrant a response by the TNT which would risk injury to officers and Mr. Holcomb, who was known by the SPD to have mental health issues.

50. Defendant Dylan Davis then sought an additional warrant against Mr. Holcomb for "resisting arrest" for his failure to come outside of his home on January 27 during his mental health crisis.

51. Later on January 28, 2023, Defendant Davis returned to Mr. Holcomb's residence and found him standing in the front yard. Davis retrieved his police K-9, Seko, and approached Mr. Holcomb in the yard.

52. Mr. Holcomb was still suffering from a mental health crisis, became scared, and ran inside of his home. He shut the door and refused to come back outside.

53.　　While at the scene, Defendant Davis did not follow appropriate proper policy and protocol for dealing with an individual suffering from a mental health crisis but instead called Sgt. Colegrove, the TNT Commander, and again asked for the TNT to respond to Mr. Holcomb's home.

54.　　Sgt. Colegrove asked Defendant Davis to tell him how the circumstances were any different from the previous encounter the day prior.

55.　　Defendant Davis told Sgt. Colegrove that he obtained a second warrant on Mr. Holcomb for "resisting arrest" the previous evening.

56.　　Sgt. Colegrove told Defendant Davis the TNT would not respond to Mr. Holcomb's residence.

57.　　In the days following, Sgt. Colegrove and Sgt. Shane Morrow met with Defendant Davis and told him why the TNT would not be activated on Mr. Holcomb or any similar incidents.

58.　　Between January 29, 2023 and February 2, 2023, Defendant Davis, frustrated from being told not to "send a message" by storming into Mr. Holcomb's residence to serve him a bench warrant, along with his friend SPD officer Logan Bradshaw, contacted Spartanburg County Sheriff's Office ("SCSO") Deputy Sean Coats regarding their attempts to arrest Darius Holcomb for the bench warrant and devised a plan to return to his home to arrest him outside of the knowledge and purview of the SPD.  Defendant Coats knew Mr. Holcomb from prior interactions with him.

　　　a.　On January 29, 2023 at 8:33 a.m., Defendant Davis messaged Defendant Coats:

　　　"Hey man, we're having an issue getting Darius Holcomb in custody this weekend. We've signed two resisting arrest warrants.  He continues to barricade himself and **we are getting stood down for forcible entry due to his mental state and the severity of the original warrant**…." (emphasis added).

　　　b.　Defendant Coats replied:

10

"I have … talked mom into having sister run him in to me last time" followed by "**So if no more fun ways to get him…I'll try that.**"

    c.   Defendant Davis also wrote:

"If it was a felony warrant I could deploy the dog and caught [*sic*] him running inside."

59.    Between January 28, 2023 and February 2, 2023, SPD Officer Logan Bradshaw also communicated with Defendant Coats:

    a.   On January 28, 2023, Officer Bradshaw sent Defendant Coats a screenshot of the CAD notes from Defendant Davis's prior attempts to arrest Darius Holcomb that stated that forcible entry was not made.

    b.   Bradshaw wrote, "**I work with fucking morons.**"

    c.   On February 2, 2023, Officer Bradshaw again messaged Defendant Coats: "Davis went out again on the 28th and tried to get him, ended up signing another resisting…"

    d.   Defendant Coats replied: "Yup" and "He [Davis] called me bout [*sic*] it's." Defendant Coats continued, "Is he working today? Y'all wanta all go out with me and get him?"

    e.   Officer Bradshaw replied, "He'll be in at 2, but he'd probably come in earlier to snag him up. **If the city takes "lead" on it tho we'll get called off…**"

    f.   Defendant Coats replied, "Let's do it at 2:30. **I'll 'take the lead'.**"

60.    Defendant Coats was later interviewed by SLED agents about the shooting of Darius Holcomb. During his first interview, Defendant Coats failed to disclose his text message communications with Defendant Davis and Officer Bradshaw. During a second interview with SLED agents, Defendant Coats acknowledged he texted with Davis and Bradshaw but was not

sure he still had the messages. When SLED agents asked him to take out his cell phone and check, he said he was uncomfortable with the request. SLED agents then asked Coats about his message to Bradshaw referencing having "fun ways" to arrest Darius Holcomb. Coats said he was not referring to Holcomb being killed but was unable to provide an explanation for what he meant. Coats then ended the interview by walking out. The following day, Defendant Coats resigned from the SCSO.

61.     Similarly, SPD Officer Bradshaw did not disclose to SLED agents certain messages he exchanged with Defendant Coats.

62.     On February 2, 2023, Defendant Coats went to Mr. Holcomb's residence to arrest him on the three warrants.

63.     When the deputies arrived, they came into the home without knocking, explaining their reason for being there after confronting Ms. Holcomb's minor grandson who was in the yard.

64.     After deputies entered the home, Mr. Holcomb was in the midst of a mental health breakdown, so he ran into his bedroom and shut the door.

65.     Deputies notified dispatch of the situation and additional deputies were summoned to the scene.

66.     Ms. Holcomb and her minor child grandson were ordered to leave the home while officers attempted to arrest Darius Holcomb.

67.     Upon information and belief, Defendant Coats then called dispatch to provide additional deputies and the SWAT team (of which he was a member) to the scene.

68.     More deputies arrived at the scene as well as Defendant Davis and SPD Officer Bradshaw.

69.     SPD Officer Bradshaw stood outside of the bedroom door with his Conducted Electrical Weapon (CEW) at the request of Defendant Coats.

70.     The SCSO SWAT team later arrived at the residence.

71.     SPD officer Bradshaw then left the scene to retrieve copies of the warrants. Defendant Davis then called Bradshaw and told him that SPD Sgt. Christina Morgan ordered Bradshaw to clear the scene.

72.     SCSO SWAT Commander Lt. Anthony Hawkins decided chemical munitions would be deployed inside Mr. Holcomb's bedroom in an effort to force him out of the room.

73.     Defendant Davis and his K-9, Seko, positioned himself outside of the residence by a bedroom window.

74.     At approximately 5:09 p.m., deputies smashed a bedroom window from the outside and threw chemical munitions inside, while Mr. Holcomb was inside experiencing a mental health crisis.

75.     Fifteen minutes later, a second round of chemical munitions was thrown inside the bedroom window.  Mr. Holcomb was still inside experiencing a mental health crisis.

76.     Lt. Hawkins decided that deputies should breach the bedroom door from inside the house and sent a police K-9 inside to extract Mr. Holcomb from inside his bedroom.

77.     Lt. Hawkins instructed SCSO Sgt. Wesley Bennett to provide cover while the K-9 was released inside Mr. Holcomb's bedroom.

78.     Defendant Coats then breached the bedroom door.

79.     The K-9 then went inside the bedroom and began biting Mr. Holcomb, who was in the midst of a mental health crisis causing him to struggle in order to protect himself from further attack.

13

80.    There were no other individuals inside the bedroom other than Mr. Holcomb.

81.    There was no immediate threat of physical harm to any person inside the bedroom, other than harm to Mr. Holcomb.

82.    Within seconds of breaching the door, however, SCSO Sgt. Wesley Bennett opened fire at Mr. Holcomb and shot at him five times, striking him in his back, chest, and inguinal area.

83.    Darius Holcomb immediately fell to the ground. Deputies entered the bedroom and moved Darius Holcomb into the living room.

84.    At no point did Mr. Holcomb pose an immediate threat to the deputies or any other persons.

85.    According to SLED investigators, Mr. Holcomb was not observed pointing any weapon at deputies or coming toward them aggressively prior to shots being fired.

86.    Mr. Holcomb suffered gunshot wounds, including a gunshot wound to his back, his chest, and his left inguinal area.  He also suffered a sharp force injury to his left arm from the K-9 bite.

87.    Mr. Holcomb experienced conscious pain and suffering from the chemical munitions, the dog attack, and the multiple gunshot wounds.

88.    EMS arrived on scene and subsequently pronounced Darius Holcomb dead inside of his home.

89.    At the time of the February 2, 2023 incident inside of Mr. Holcomb's residence and bedroom, both SPD officers and SCSO deputies, including Defendant Dylan Davis, SPD officer Logan Bradshaw, and Defendant Coats, were aware of the prior attempts by Davis to arrest Mr. Holcomb, Mr. Holcomb's mental illness and mental health crisis, and the SPD's prior instruction

14

to standdown and not escalate his arrest through use of force due to his condition.  Further, on information and believe, they did not inform the on-scene commander of Mr. Holcomb's mental illness.

90.     At no point did any law enforcement officers attempt to solicit the use of a mental health professional to intervene in the situation, despite knowing Mr. Holcomb's condition and the prior history with him.

91.     No law enforcement officer on scene, particularly Defendants Davis and Coats, intervened to keep Deputy Bennett from firing five shots at Holcomb while he known to be mentally and physically distressed and not presenting any threat of harm to any officer or individual.

92.     SCSO Lt. Hawkins told SLED agents after the shooting that had he known of the circumstances of the prior attempts by Defendant Davis and SPD officers to arrest Darius Holcomb, he would not have introduced chemical munitions inside of Holcomb's bedroom or breached the bedroom door and send the K-9 dog inside.

93.     In other words, had Defendant Davis, officer Logan Bradshaw, or Defendant Coats disclosed to Lt. Hawkins on scene that Mr. Holcomb was suffering a mental health crisis and prior stand down orders from the SPD chain of command in the days prior, he would not have escalated efforts to arrest him and Mr. Holcomb would not have been shot and killed inside of his bedroom.

## FOR A FIRST CAUSE OF ACTION
### Negligence, Gross Negligence, and Recklessness
### Against Spartanburg County Sheriff's Office, Spartanburg County, Sheriff Chuck Wright in his Official Capacity, City of Spartanburg, Dylan Davis, and Sean Jacob Coats

94.     Plaintiff incorporates and realleges all allegations contained above as if fully set forth herein verbatim.

95.     Defendants City of Spartanburg, Spartanburg County, Sheriff Chuck Wright in his official capacity, and Spartanburg County Sheriff's Office are liable to the Plaintiff as a result of their law enforcement officers' negligent acts and omissions, gross negligence, recklessness, willfulness, and wantonness (including that of Deputy Wesley E. Bennett); and Defendants Dylan Davis and Sean Jacob Coats are alternatively liable to the Plaintiff individually for their acts and omissions done with actual malice and/or intent to harm Mr. Holcomb.

96.     These Defendants departed from the duties of care owed to citizens by law enforcement officers and agencies and were thereby negligent, careless, grossly negligent, reckless and acted in violation of the duties owed to Darius Holcomb in one or more of the following particulars:

   a.  When Defendant Dylan Davis and SPD Officer Bradshaw contacted Defendant Coats and engaged in a plan to go to his residence to Mr. Holcomb's residence and use "fun ways" (i.e., force) to arrest him, they were aware of his mental illness, his mental health crisis, and that he was not mentally capable of responding to commands from police.

   b.  Instead of treating him as an individual with a recognized serious mental health disability, as they were required to do, Davis and Bradshaw concocted a dangerous plan with Defendant Coats to arrest Darius Holcomb and "send him a message" based upon pretextual factual allegations communicated to their superiors.

   c.  Notwithstanding that Defendants Davis and Coats along with Officer Bradshaw knew that Holcomb was experiencing a mental health crisis, these individuals disregarded orders and knowingly caused, triggered, and/or encouraged SWAT

16

tactical procedures to be used at Mr. Holcomb's residence knowing of his mental health emergency, ignored offers by Holcomb's mother and sister that they could coax him to come quietly, as they had done on many occasions in the past, they refused to provide him with medical interventions and instead caused him to become further agitated by the use of tear gas and canine police dogs, ultimately leading to him being shot and killed.

d. Defendant Davis and Officer Bradshaw failed to heed the decision of Spartanburg Police Department command staff to stand down and to not escalate their encounters with Mr. Holcomb and instead find an alternative method to arrest Darius Holcomb in public such as during a traffic stop or catching him walking along the road.

e. Defendants City of Spartanburg, Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, through their law enforcement officers Davis, Bradshaw, Bennett, and Coats, failed to follow generally accepted police practices and other mandatory directives applicable to the circumstances, including but not limited to failing to follow generally accepted police practices for interactions with individuals suffering a mental health crisis;

f. Defendants City of Spartanburg, Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, though their law enforcement officers, departed from the duties of care required by law enforcement agencies that hire, train, employ, and supervise these officers and were thereby negligent, careless, grossly negligent, reckless and acted in violation of the duties owed to Darius Holcomb

17

g. Defendants City of Spartanburg, Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, though their law enforcement officers, and alternatively Defendants Davis and Coats acting with actual malice or intent to harm, failed to adhere to proper law enforcement procedures when serving search warrants;

h. Defendants City of Spartanburg, Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, though their law enforcement officers, and alternatively Defendants Davis and Coats acting with actual malice or intent to harm, failed to use alternative less violent and/or lethal methods of executing a warrant;

i. Defendants City of Spartanburg, Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, though their law enforcement officers failed to have in place proper and adequate policies, procedures and protocols for law enforcement officers serving warrants on individual suffering from a mental health emergency or, if such policies, procedures and protocols were in place, in failing to use due care to enforce them when presented with knowledge that individual officers were not following orders;

j. Defendants City of Spartanburg, Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, though their law enforcement officers, failed to properly train and educate their law enforcement officers or, if properly trained or educated, in failing to allow their law enforcement officers to exercise independent judgement and care;

18

k.  In failing to secure proper care for Mr. Holcomb when these Defendants and/or their personnel, agents, and/or employees knew or should have known that Mr. Holcomb was in open and obvious mental health distress;

l.  In disregarding Mr. Holcomb's known mental illness and distress when attempting to arrest him;

m.  In failing to take proper steps to calm their interactions with Mr. Holcomb to properly serve any warrants;

n.  In failing to request or provide intervention from trained mental health professionals, such as NAMI, during their interactions with Mr. Holcomb when they knew he was suffering from a mental health crisis when he refused to come out of his home;

o.  Defendants City of Spartanburg, Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, in failing to properly train and supervise their law enforcement officers to ensure that individuals suffering from mental health emergencies are treated appropriately and with proper care during interactions with police officers, such as providing training from NAMI;

p.  Defendants City of Spartanburg, Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, in failing to draft and/or institute proper policies and procedures necessary to ensure that individuals suffering from mental health emergencies are provided appropriate protection and care;

q.  Defendants City of Spartanburg, Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, in failing to comply with national, state,

and local standards and guidelines with respect to interacting with individuals suffering from mental health emergencies;

r.  Defendants Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, in negligently creating a violent scene inside of Darius Holcomb's home by, among other things, breaking windows and deploying tear gas and a K-9 into Mr. Holcomb's bedroom while he was suffering from a mental health crisis;

s.  Defendants Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, in negligently causing the shooting injuries and dog bite of Darius Holcomb through their deputies, including Deputy Wesley E. Bennett;

t.  Defendants Sheriff Wright, Spartanburg County, and Spartanburg County Sheriff's Office, in negligently and repeatedly discharging a firearm against Darius Holcomb by Deputy Wesley E. Bennett when it was objectively unreasonable to do so;

u.  In such other particulars as may be ascertained through discovery or at trial of this case.

97.  The above acts of negligence, gross negligence, recklessness, willfulness, and wantonness by Defendants City of Spartanburg, Spartanburg County, Sheriff Wright, and Spartanburg County Sheriff's Office (by and through their law enforcement departments' employees, agents, and/or servants including Deputy Wesley E. Bennett, Sean Jacob Coats, and Officers Davis and Bradshaw), and/or alternatively the acts of Defendants Davis and Coats done with actual malice and intent to harm, and all other breaches of the duties owed to Mr. Holcomb

20

have proximately and directly caused Mr. Holcomb to suffer conscious pain and suffering, emotional distress, and catastrophic injuries, including wrongful death.

98.    As a result of the above acts and omissions, Plaintiff is entitled to recover actual and punitive damages to be determined by a jury.

**FOR A SECOND CAUSE OF ACTION**
**Wrongful Death**
**Against Spartanburg County Sheriff's Office, Spartanburg County, Sheriff Chuck Wright in his Official Capacity, City of Spartanburg, Dylan Davis, and Sean Jacob Coats**

99.    Plaintiff re-alleges the preceding paragraphs as though set forth verbatim herein.

100.    This action is brought for the wrongful death of Darius Holcomb, pursuant to the provisions of § 15-51-10 et seq., Code of Laws of South Carolina (1976, as amended), as is brought for any statutory heirs of Daris Holcomb, who died on February 2, 2023.

101.    The death of the Decedent was caused and occasioned by the grossly negligent and reckless acts of Defendants and/or their employees, agents, and/or servants (including Deputy Wesley E. Bennett), and, in addition to or in the alternative, by the actual malice and/or intent to harm by Defendants Dylan Davis and Sean Jacob Coats.

102.    Prior to his death, Darius Holcomb was thirty-nine (39) years of age. By reason of his untimely death, his heirs have been deprived of all the benefits of his society and companionship and have been caused great mental shock and suffering by reason of his death. They have and will forever be caused grief and sorrow by the loss of Mr. Holcomb's love, society, and companionship. They have been deprived of his future experiences and judgments. They have incurred expenses for his funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

      a.  mental shock and suffering;

      b.  wounded feelings;

    c.   grief and sorrow;

    d.   loss of support;

    e.   loss of companionship; and

    f.   deprivation of the age and comfort of the Decedent's society and loss of his experience, knowledge, and judgment.

103.    As a further result, and because of these Defendants' conduct, which ultimately caused the wrongful death of Darius Holcomb, the Plaintiff is entitled to ACTUAL and CONSEQUENTIAL damages in an amount to be determined by a jury in accordance with the law and evidence in this case.

### FOR A THIRD CAUSE OF ACTION
**Survival**
**Against Spartanburg County Sheriff's Office, Spartanburg County, Sheriff Chuck Wright in his Official Capacity, City of Spartanburg, Dylan Davis, and Sean Jacob Coats**

104.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

105.    This survival claim arises from the grossly negligent and reckless acts of Defendants and/or their employees, agents, and/or servants (including Deputy Wesley E. Bennett), and, in addition to or in the alternative, by the actual malice and/or intent to harm by Defendants Dylan Davis and Sean Jacob Coats.

106.    As a result of the above referenced acts and/or omissions, Decedent Darius Holcomb sustained serious physical injuries up to and leading to his wrongful death.

107.    Pursuant to the South Carolina Survival Act, Plaintiff is entitled to bring all of the above-referenced and foregoing causes of action as the duly appointed Personal Representative of the Estate of Darius L.J. Holcomb.

108.    Plaintiff alleges that as a result of the above referenced acts, Darius Holcomb suffered conscious pain and suffering, personal injuries and trauma prior to his death, funeral expenses, and other compensatory damages, and is entitled to punitive damages in an amount to be determined by a jury.

109.    All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, and Defendants' obligations and duties to Plaintiff.

110.    Each of these acts and/or omissions and/or commissions proximately caused Darius Holcomb's injuries and wrongful death.

111.    Consequently, Plaintiff seeks actual and punitive damages and such other and further relief this Honorable Court deems just and proper.

## FOR A FOURTH CAUSE OF ACTION
### Violation of Title II of the Americans With Disabilities Act
### Against Defendants City of Spartanburg, Spartanburg County, and Spartanburg County Sheriff's Office

112.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

113.    Darius Holcomb was a qualifying individual with a disability and/or had a perceived mental impairment.

114.    Defendant City of Spartanburg is a public, local government entity in the State of South Carolina subject to the antidiscrimination requirements of Title II of the Americans with Disabilities Act and a recipient of federal funding.

115.    Defendant Spartanburg County is a public, county level entity in the State of South Carolina subject to the antidiscrimination requirements of Title II of the Americans with Disabilities Act and a recipient of federal funding.

116.    Defendant Spartanburg County Sheriff's Office is a public, county level entity in the State of South Carolina subject to the antidiscrimination requirements of Title II of the Americans with Disabilities Act and a recipient of federal funding.

117.    As a South Carolina resident and citizen, Mr. Holcomb was otherwise qualified to receive proper and appropriate law enforcement treatment by the City of Spartanburg's police department, Spartanburg County, and the Spartanburg County Sheriff's Office.

118.    Upon information and belief, at all times relevant, Defendants City of Spartanburg, Spartanburg County, and the Spartanburg County Sheriff's Office have systemic patterns of non-compliance with Crisis Intervention Training ("CIT"), failing to provide accommodations under the ADA, escalating instead of deescalating situations involving individuals requiring mental health services, using excessive force in such situations, and acting with deliberate indifference by violating South Carolina laws requiring police officers to recognize mental health crisis in individuals and/or to de-escalate in such situations.

119.    The City of Spartanburg, Spartanburg County, and Spartanburg County Sheriff's Office's conduct, as described in this complaint, demonstrated a deliberate failure to provide reasonable accommodation to Mr. Holcomb including when attempting to serve warrants and/or arrest him while he was experiencing a mental health emergency.

120.    The City of Spartanburg, Spartanburg County, and Spartanburg County Sheriff's Office's conduct in failing to provide reasonable accommodation to Mr. Holcomb was deliberately indifferent in that they each had notice of the need to reasonably accommodate Mr. Holcomb's disability related needs and failed to do so.

121.    As a result of the failure to provide reasonable accommodation to Mr. Holcomb, he ultimately suffered physical injuries, emotional injuries, and injuries greater than others in similar circumstances.

**FOR A FIFTH CAUSE OF ACTION**
**Violation of Section 504 of the Rehabilitation Act**
**Against Spartanburg County Sheriff's Office and Spartanburg County**

122.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

123.    Darius Holcomb was a qualified individual with a mental health disability.

124.    Defendant Spartanburg County Sheriff's Office is a public office of the State of South Carolina and a recipient of federal funding subject to the antidiscrimination requirements of Section 504 of the Rehabilitation Act.

125.    Defendant Spartanburg County is a public office of the State of South Carolina and a recipient of federal funding subject to the antidiscrimination requirements of Section 504 of the Rehabilitation Act.

126.    Upon information and belief, Spartanburg County and/or the Spartanburg County Sheriff's Office had notice of Darius Holcomb's qualified disability.

127.    The conduct, as described herein, demonstrated a deliberate failure by one or more of these defendants to provide reasonable accommodations to Darius Holcomb, including when engaging with him in a law enforcement capacity on February 2, 2023, including:

    a.  Defendant SCSO and/or Defendant Spartanburg County's deficient policies and/or practices of treating persons suffering from mental health crises, including Darius Holcomb, identical to persons not suffering from mental health disabilities;

b. Defendants' failure to adequately train SCSO deputies to make reasonable accommodations for persons suffering or perceived to be suffering from mental health illnesses or disabilities while attempting to take them into custody;

c. Defendants' violation of Mr. Holcomb's rights when they failed to follow South Carolina law enforcement Crisis Intervention Team protocols, which amplified Mr. Holcomb's condition, such as by breaking his bedroom window, deploying tear gas inside his bedroom, acting aggressively towards him because he was exhibiting symptoms of a mental health crisis, and by deploying a K-9 into his bedroom to attack him because he was exhibiting symptoms of a mental health crisis;

128. Defendants' conduct in failing to provide reasonable accommodations to Darius Holcomb was deliberately indifferent in that these Defendants had notice of the need to reasonably accommodate Mr. Holcomb's disability-related needs but failed to do so.

129. As a direct and proximate result of the failure to provide reasonable accommodations, Darius Holcomb suffered greater injuries than other individuals taken into custody, specifically he was physically harmed and killed.

130. Plaintiff, therefore, seeks survival damages on behalf of Darius Holcomb, including for the nature and extent of his injuries, pre-death pain and suffering, emotional distress, and death.

### FOR A SIXTH CAUSE OF ACTION
**Assault and Battery**
**Against Defendants Spartanburg County, Spartanburg County Sheriff's Office, and Wesley E. Bennett**

131. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

132.    At all times relevant, deputies with the Spartanburg County Sheriff's Office, including but not limited to Sean Jacob Coats and Wesley E. Bennett, intentionally engaged in conduct on February 2, 2023 that was carried out in such a manner as to place Decedent Darius Holcomb in reasonable apprehension of bodily harm.

133.    At all times relevant, on February 2, 2023, those deputies also intentionally inflicted physical contact with Decedent Darius Holcomb, including through a K9, that was intended to place him in reasonable fear of bodily harm.

134.    At no time did Darius Holcomb consent to any harmful or offensive contact.

135.    Alternatively, Defendant Wesley E. Bennett's harmful and offensive contact with Darius Holcomb placed him in reasonable apprehension of harm and was done with an intent to harm him and/or done with malice.

136.    As direct and proximate result of this assault and battery, Decedent Darius Holcomb suffered bodily injury and emotional distress.

**FOR A SEVENTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – Unlawful Use of Excessive Force / Unlawful Seizure**
**Against Defendant Wesley E. Bennett in his individual capacity**

137.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

138.    This cause of action is brought against Defendant Wesley E. Bennett in his individual capacity.

139.    At all times relevant, Defendant Bennett was a sworn law enforcement officer with the Spartanburg County Sheriff's Office and acted under the color of state law.

140.    Upon information and belief, as a deputy with the SCSO, Defendant Bennett was aware of the SCSO's policies and procedures as well as generally accepted policing standards.

141.    At all times relevant, Defendant Bennett knew or should have known that Darius Holcomb, under the facts and circumstances described herein, did not pose a substantial and immediate risk of serious physical injuries to others.

142.    Defendant Bennett knew or should have known that indiscriminately and repeatedly discharging his firearm from outside Mr. Holcomb's bedroom to shoot Mr. Holcomb who was alone inside of his bedroom posed a substantial and immediate risk of serious injury or death to him.

143.    No objectively reasonable police officer would have discharged a firearm inside of Mr. Holcomb's home under the existing circumstances then and there prevailing.

144.    Decedent Darius Holcomb was deprived of his rights, privileges and immunities safeguarded by the Fourth and Fourteenth Amendments of the U.S. Constitution by Defendant Bennett, particularly his right to be free from excessive and unreasonable force, the guarantee to all citizens "to be secure in their houses . . . against unreasonable . . . seizures," and the deprivation of his life without due process of law.

145.    Upon information and belief, the excessive and deadly force that Darius Holcomb was subjected to was employed by Defendant Bennett in deliberate indifference to Darius Holcomb's life and without any reasonable necessity to use such force, much less the excessive and deadly force that was employed without legal justification.

146.    Defendant Bennett's seizure of Darious Holcomb inside of his bedroom was also objectively unreasonable and done with deliberate indifference in light of the facts and circumstances then and there prevailing.

147.    As a direct and proximate result of the excessive force and unlawful seizure of Darius Holcomb by Defendant Bennett, Darius Holcomb suffered damages, including

constitutional injuries, physical injuries, tremendous irreparable emotional and mental harm, and death.

148.     As a direct and proximate result of Defendant Bennett's violation of Decedent's constitutionally protected rights, Plaintiff is entitled to recover actual and punitive damages in an amount as determined by a jury.

**FOR A EIGHTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – Municipal Liability**
**Against Defendants Spartanburg County, Sheriff Chuck Wright in his official capacity,**
**and Spartanburg County Sheriff's Office**

149.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

150.     At all times relevant, Defendants Spartanburg County and/or Sheriff Chuck Wright in his official capacity and the Spartanburg County Sheriff's Office acting by and through their agents and policymakers under color of state law, had unofficial policies and/or customs that were so persistent as to become standard operating procedure and/or policy of deliberate indifference to the safety of citizens of Spartanburg County suffering from mental disabilities and illness during law enforcement encounters, including Darius Holcomb, constituting a conscious disregard of their clearly established Fourteenth Amendment substantive due process rights.

151.     These unofficial policies and/or customs were the moving force that caused the injury and death of Darius Holcomb and violated his clearly established Fourteenth Amendment substantive due process right, including his right not to be deprived of his life without due process of law.

152.     Additionally, Defendants SCSO, Sheriff Chuck Wright in his official capacity, and/or Spartanburg County, upon information and belief, inadequately trained, supervised, and/or

29

disciplined their employees and agents, including deputies, as to their interactions with persons suffering from mental health illness or crisis during law enforcement encounters.

153.    These failures to adequately train, supervise, and/or discipline were done with recklessness and deliberate indifference to the safety of persons suffering from mental health illness or crisis in Spartanburg County during law enforcement encounters, including Darius Holcomb, constituting a conscious disregard to their clearly established Fourteenth Amendment substantive due process rights. These failures were the moving force that caused the injury and death of Mr. Holcomb and violated his clearly established substantive due process rights.

154.    Spartanburg County is, upon information and believe, liable to satisfy any judgment against the Spartanburg County Sheriff's Office and Sheriff Chuck Wright in his official capacity pursuant to 42 U.S.C. § 1983, for any one or more of the following reasons:

       a.   That, upon information and belief, the South Carolina General Assembly has determined that the Spartanburg County Sheriff's Office is to be financed entirely by public funds appropriated to it by Spartanburg County;

       b.   That Sheriff Chuck Wright, in his official capacity as Sheriff of Spartanburg County, lacks the authority to levy taxes and/or fund a budget;

       c.   That, upon information and belief, Spartanburg County is statutorily obligated to fund the Spartanburg County Sheriff's Office, and pays for the training, salaries, and benefits of its Deputies who are classified and paid as County employees;

       d.   That, upon information and belief, Spartanburg County indemnifies the SCSO from all risks of its operations through the purchase of insurance and/or payment of claims made against SCSO; and

       e.   That, upon information and belief, Spartanburg County pays for all liabilities incurred by the SCSO incidental to the proper conduct of SCSO's operations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a trial by jury on all issues presently raised or that may be raised in any of the pleadings hereafter and further seeks:

i.   Judgment against Defendants, jointly and severally, for actual, consequential, special, and compensatory damages in an amount to be determined by the jury;

ii.  Judgment against Defendants Bennett, Coats, and Davis for punitive damages in an amount to be determined by the jury and to the extent permitted by South Carolina law;

iii. For the costs of this action; and

iv.  For all such other and further relief as the Court deems just and proper.

Respectfully submitted,

COLIN RAM LAW, LLC

*s/ Colin V. Ram*
Colin V. Ram (Fed. Bar No. 12958)
941 Houston Northcutt Blvd., Suite 203
Mount Pleasant, SC 29464
Tel. (843) 278-7000
Fax (854) 228-9224
colin@sctrial.com

May 13, 2025
Mount Pleasant, South Carolina