**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**SPARTANBURG DIVISION**

| | |
|---|---|
| **TERRIA HOLCOMB, PERSONAL REPRESENTATIVE FOR THE ESTATE OF DARIUS L. J. HOLCOMB,** ) ) ) ) | **C.A. No. 7:24-cv-1145-JDA-KFM** |
| **PLAINTIFF,** ) ) | |
| **v.** ) ) ) | **DEFENDANT SEAN JACOB COATS'S MEMORANDUM IN** |
| **SPARTANBURG COUNTY, SPARTANBURG COUNTY SHERIFF'S OFFICE, OFFICER WESLEY E. BENNETT, SHERIFF BILL RHYNE, CITY OF SPARTANBURG, DYLAN DAVIS, AND SEAN JACOB COATS,** ) ) ) ) ) | **SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| **DEFENDANTS**. ) ) ) | |

Defendant Sean Jacob Coats hereby submits this Memorandum of Law in support of his Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. Defendant Coats also craves reference to Defendants Dylan Davis's, Wesley Bennett's, City of Spartanburg's, and Spartanburg County, Spartanburg County Sheriff's Office, and Sheriff Bill Rhyne's Motions for Summary Judgment, together with the memoranda and exhibits submitted therewith. ECF Nos. 91, 92, 93, and 94.

Terria Holcomb's ("Plaintiff") suit arises from a use of force incident resulting in the death of her son, Darius L. J. Holcomb (hereinafter, "Holcomb" or "Decedent") during an attempt to serve arrest warrants by members of the Spartanburg County Sheriff's Office (hereinafter, "SCSO"), including one of its deputies, Defendant Sean Jacob Coats ("Coats"), on February 2,

2023. Against Defendant Coats, Plaintiff alleges state law claims for negligence, gross negligence, wrongful death, survival, and (possibly) assault and battery.

Defendant Coats is immune from Plaintiff's negligence, gross negligence, and recklessness claims under the South Carolina Tort Claims Act. The attempt to avoid this immunity by alleging Coats acted with actual malice or intent to harm must fail. Plaintiff's Amended Complaint fails to allege plausible facts suggesting that Coats possessed the state of mind necessary to support these claims. Even if Coats was not immune from liability in this lawsuit, because his conduct was done pursuant to legitimate law enforcement purposes, he owed no duty to Plaintiff. Moreover, there is no evidence to suggest that Coats's actions or omissions proximately caused Holcomb's death. Defendant Coats now moves for summary judgment on these grounds.

## SUMMARY OF THE ACTION

Sean Coats, served as a deputy with the Spartanburg County Sheriff's Office[1] warrants division. Defendant Coats's presence at Plaintiff's home, are important to evaluating the events of. On February 2, 2023, Coats was attempting service of three valid warrants on Mr. Holcomb for his arrest: one was a bench warrant for failure to appear on a charge of failing to register as a sex offender, and two were for resisting arrest. Exhibit A, Warrants. The two warrants for resisting arrest stemmed from attempts by Spartanburg Police Department ("SPD") officers to serve the warrant for failure to register a few days earlier.

Deputy Coats had previously arrested Mr. Holcomb and was familiar with his mother and sister. Ex. B, Coats Depo., at 57:2-4. In October of 2020, Coats, SCSO Deputy Junkins, and SPD officer Brewer successfully arrested Holcomb while serving an earlier warrant for failing to

---

[1]    Deputy Coats previously worked for the Spartanburg Police Department before being offered a job with the Sheriff's Office in the warrants division. Exhibit B, Coats Depo., at 21:4-10.

register as a sex offender. Ex. C, Incident Report; *see also* Ex. B, at 57:18-58:10. They met Mrs. Holcomb outside as they approached her residence and, based on her recommendation, allowed her to go inside first to "calm Mr. Holcomb down." Ex. C, at 3. After her attempt failed, the officers entered the home and found Holcomb lying on his bed. Mr. Holcomb refused Coats's directives to stand and place his hands behind his back by saying "f*** you … I ain't going nowhere." As Deputy Junkins described the interaction, "Coats tried to reason with Holcomb to prevent the situation from escalating." *Id*., at 5. After additional verbal directives were refused, Coats, Junkins, and Brewer seized Holcomb.

Mr. Holcomb was handcuffed and escorted to Coats's patrol vehicle without injury despite Holcomb's defensive resistance. Ex. C, at 3-4. While leaving the home, Holcomb spat in his mother's face. Ex. B, Coats Depo., at 58:4-10. Mrs. Holcomb declined to make a criminal complaint against Holcomb for the assault. Coats did, however, obtain a warrant from Judge Bagwell charging Holcomb with resisting arrest. Ex. C, at 6.

Coats testified to another interaction regarding Holcomb approximately a year after the successful arrest in 2020. Ex. B, Coats Depo. at 58:11-60:9. On that occasion, Coats spoke with a family member and "convinced her to bring him into the warrant office and turn himself in -- or she turned him in." *Id*.

Coats assisted the Spartanburg Police Department in the service of arrest warrants within the city "hundreds of times." Ex. B, Coats Depo., 186:1-11. Unlike the Sheriff's Office, SPD did not have a dedicated unit for serving warrants. *Id*., at 31:4-15. Thus, on the morning of January 29, 2023, Defendant Dylan Davis texted Coats as follows:

> Davis: "Hey man, we're having an issue getting Darius Holcomb in custody this weekend. We've signed two resisting warrants. He continues to barricade himself and we are getting stood down for forcible entry due to his mental state and the

> severity of the original warrant. If you get him in custody let me know please. If not, I'm going to work on it when I come back Wednesday."
>
> Coats: "Yeah[,] heard y'all got stood down[.] lol…But yeah he's always gave trouble. I'll work on him tomorrow.[]"
>
> Davis: "Thanks."
>
> Coats: "I have however talked mom into having sister turn him in to me last time[.] So if no more fun ways to get him…I'll try that[.] If you want me to hold off til Wednesday thats cool you can come with me then."
>
> Davis: "Tried that yesterday. She said he assaulted her when she tried to bring him to turn himself in but she refused to press charges. She got him to go outside and called me. I went over there and he ran in the house and barricaded again. She wouldn't give us the key to go in and we still can't force entry."

Ex. D, at 1-4 (errors in original); *see also* Coats Dep. 137:3-24. After a short description of a prior arrest of Mr. Holcomb, Coats responded, "We'll get him!" Ex. D, at 5. Coats described the SPD officers' request for his assistance as follows.

> Like, again, me specializing in warrants, and them being patrol officers, it was, one, at the time it was assist them in arresting someone who had warrants that has been violent with me in the past and was violent with the mother, so there's all those factors, I thought maybe with my expertise I would be able to get him brought to a judge, arrested without incident, versus them being told to stand down. At the time I thought I was trying to help.

Coats Dep. 55:21-56:12.

On January 28th, SPD officer Bradshaw texted Coats a screenshot of a report about the service attempt on January 27th. Bradshaw wrote that he did not want to waste time going after Mr. Holcomb only to be stood down because of his "mental state." Ex. E, at 1-2. On January 31st, Bradshaw asked Coats by text if he had arrested Holcomb yet; Coats responded, "Not yet. Been swamped[.]" *Id.*, at 3.

On the morning of February 2, 2023, the date of the subject incident, Bradshaw texted Deputy Coats that Officer Dylan had tried again to arrest Mr. Holcomb on January 28th. Ex. E, at

3. Bradshaw noted if the SPD took the lead they would get called off, but that Plaintiff seemed willing to help get Holcomb in custody. *Id.*, at 4. Deputy Coats suggested meeting at 2:30 and stated he would "'take the lead.'" *Id.*, at 5.[2] However, SPD Officers Bradshaw and Davis were responding to another call and were unavailable to meet at the appointed time. *See* Ex. E at 4-5; Ex. F, Davis Dep. 124:18-20; Coats Dep. 144:6-10.

Prior to serving the warrants, Coats likely looked them up in Spillman (which is shorthand for the Sheriff's Office's electronic record system). Ex. B, Coats Depo., 42:12-43:30. Coats deposed that if Holcomb was not at the residence on February 2, 2023, he would have attempted to persuade Holcomb's family members to turn him in as he had done in their second interaction. *Id.*, at 60:10-61:6. Coats emphatically testified that he had no intention of harming Holcomb when serving the warrants. *Id.*, 188:12-23.

Coats and Deputies Clontz and Branson, also deputies within the Sheriff's Office's warrant's division, met at 2:30 p.m. as planned and proceeded to Plaintiff's residence to serve the outstanding warrants. Ex. B, Coats Depo., at 144:1-2; 153:9-20; & 156:12-13. On arrival the deputies made contact with Holcomb in the living room. Coats perceived that Holcomb was holding something behind his right leg which Coats assumed was a bladed weapon. *Id.*, at 72:10-11 & 73:12-14. Holcomb moved towards his bedroom, and threatened to kill Coats. Coats decided not to "go hands-on" right then because Plaintiff insinuated Holcomb had a weapon. *Id.*, at 70:22-71:22. Because of Holcomb's threat and his retreat into his bedroom, Coats concluded he had again

---

[2]     Plaintiff's expert testified it was not "appropriate to read firm meaning into . . . conversations between officers." Ex. G, Stoughton Depo., at 219:21-24. He explained: "Officers are going to say some stuff, and in communicating with each other, they may say stuff in problematic or unprofessional ways. I don't - - I don't read a lot - - I don't read into that." *Id.*, at 219:25 – 220:3.

resisted arrest and threatened the life of a public official. *Id*., 78:15-17. Following the barricade protocol, the deputies called for additional resources. *Id*., at 76:9-25.

Over the next approximately two and a half hours, various deputies attempted to get Mr. Holcomb to peacefully surrender and come out of his bedroom, even to the point of begging him to come out. Ex. G, Stoughton Depo., 176:7-22; 255:22-256:5. Officers on scene, including two certified crisis negotiators, tried to talk Holcomb into surrendering peacefully. During the negotiations, Holcomb made multiple, bizarre comments suggestive of mental illness. Ex. B, Coats Depo., 158:24-159:2; Ex. G, Stoughton Dep. 39:16-18; 258:13-15.

After no progress for two and a half hours, chemical munitions were introduced into the bedroom without success in getting Holcomb to exit. Ex. H, Bennett Dep. 98:6-13. After fifteen minutes, another round of chemical munitions were fired into the room. When this also proved unsuccessful, deputies breached the door and deployed a K-9 to apprehend Holcomb. Ex. H, at 27:6-13. Holcomb began attempting to stab the dog with a large barbeque fork, and moved in such a way the deputy closest to him perceived as presenting a threat of serious bodily harm. Ex. H., Bennett Dep. 135:12 – 136:17; 137:9-10; see also Ex. B, Coats Dep. 164:4-15; Ex. G, Stoughton Dep. 41:12-18. Thus, Deputy Bennett shot Holcomb, resulting in his death. ECF No. 46, at ¶¶ 82 & 88.

Plaintiff filed an Amended Complaint on May 13, 2025, naming multiple defendants and bringing a variety of claims. ECF No. 46. With respect to Coats, Plaintiff asserts he acted both within the course and scope of his employment, "and/or with actual malice or intent to harm Mr. Holcomb." *Id*., at ¶ 5. Plaintiff contends if Defendant had "disclosed to" the Sheriff's Office SWAT commander on scene on February 2nd that "Holcomb was suffering a mental health crisis and [the]

prior stand down orders" received concerning the previous warrant service attempts, Holcomb would not have been killed. *Id*., at ¶ 93.

Plaintiff brings a negligence, gross negligence, recklessness action against Coats, alleging he "concocted a dangerous plan" to arrest Holcomb "and 'send him a message' based upon pretextual factual allegations communicated to [his] superiors," and "disregarded orders and knowingly caused . . . SWAT tactical procedures to be used " against him. *Id*., at ¶¶ 96(b) & (c). Plaintiff alleges Defendant Coats acted with "actual malice or intent to harm" by failing "to adhere to proper law enforcement procedures when serving search [sic] warrants," and failing "to use alternative less violent and/or lethal methods of executing a warrant[.]" *Id*., at ¶ 96(g) & (h).

Plaintiff also brings wrongful death and survival claims against Defendant, asserting he was grossly negligent or reckless, or alternatively acted with "actual malice and/or intent to harm." ECF No. 46, at ¶¶ 101 & 105. Defendant Coats filed a timely Answer on May 27, 2025. ECF No. 57.

## LEGAL STANDARD

According to FED. R. CIV. P. 56(a), summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …,

admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1), FCRP.

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v.Beto*, 405 U.S. 319 (1972), this requirement does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

<u>**ARGUMENT**</u>

I.      **GOVERNMENTAL EMPLOYEE IMMUNITY REQUIRES DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST SEAN JACOB COATS.**

The South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, *et seq.* (hereinafter "SCTCA" or "the Act"), is the exclusive state law remedy available for any tort committed by a governmental entity or its agents, officers, or employees. *See* S.C. Code Ann. § 15-78-70(a); *Flateau v. Harrelson*, 355 S.C. 197, 203, 584 S.E.2d 413, 416 (Ct. App. 2003). "The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained" within the SCTCA. S.C. Code Ann. § 15-78-40.

Plaintiff, in her Amended Complaint, alleges only state law causes of action against Defendant Coats for Negligence, Gross Negligence, and Recklessness, Wrongful Death, and Survival.  ECF No. 46, Amended Complaint, ¶ ¶ 94-98, & 101.

Because Plaintiff admits in her Amended Complaint that Coats was acting "in the course and scope of his employment" with the Sheriff's Office, her negligence, gross negligence, and recklessness claims against Coats must be dismissed.[3] ECF No. 46, at ¶ 10. Plaintiff attempts to avoid Coats's SCTCA immunity by alleging that he acted "with actual malice or intent to harm Mr. Holcomb." *Id*. This, however, is insufficient to survive summary judgment.

The SCTCA provides that a governmental employee "who commits a tort while acting within the scope of his official duty is not liable therefore," unless it is proved that either his "conduct was not within the scope of his official duties or that it constituted . . . actual malice, [or] intent to harm." § 15-78-70(a) & (b); *see also Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995) (noting personal liability of a government employee can exist only when one of the exceptions of § 15-78-70(b) applies).[4] The phrase "[s]cope of official duty" is defined as "'(1) acting in and about the official business of a governmental entity and (2) performing official duties." *Id*. (*quoting* § 15-78-30(i)). Thus, the "statutory dialectic reveals that a governmental employee acting within the scope of official duty is exempt from personal liability." *Flateau*, 355 S.C. at 206, 584 S.E.2d at 417. "[U]nder the SCTCA, for a given tort, either the governmental entity or the employee is liable but not both." *Newkirk v. Enzor,* 240 F. Supp. 3d 426, 436 (D.S.C. 2017).

---

[3]     Notwithstanding this admission, there is no evidence in the record suggesting that Defendant Coats's conduct was done other than "in furtherance of [the Spartanburg County Sheriff's] business." *Peay v. Florency Cnty*., C/A No. 4:24-cv-1307, 2024 WL 4957408, at *6 (D.S.C. Aug. 15, 2024) (*citing Frazier v. Badger*, 361 S.C. 94, 102, 603 S.E.2d 587, 591 (2004)).

[4]     The SCTCA additionally exempts the governmental entity for liability when the loss results from "employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-60(17).

## II.    PLAINTIFF FAILED TO ALLEGE PLAUSIBLE FACTS SUPPORTING THE BARE ALLEGATION THAT COATS ACTED WITH INTENT TO HARM OR MALICE.

As to Plaintiff's claims of actual malice and intent to harm, the Amended Complaint fails to meet the pleading standards described in *Ashcroft v. Iqbal*. 129 S. Ct. 1937, 1949 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

As alleged, "At all times relevant, Defendant Coats was acting … in the course and scope of his employment … and/or with actual malice or intent to harm Mr. Holcomb." ECF No. 46, at ¶ 10. "Sean Jacob Coats [is] alternatively liable to the Plaintiff individually for [his] acts and omissions done with actual malice and/or intent to harm Mr. Holcomb." *Id*., at ¶ 95. "[A]lternatively …Coats acting with actual malice or intent to harm, failed to adhere to proper law enforcement procedures when serving search warrants" … [and] "failed to use alternative less violent and/or lethal methods of executing a warrant." *Id*., at ¶ 96(g) & (h). Finally, Holcomb's death "was caused and occasioned by the grossly negligent and reckless acts of Defendants … and, in addition to or in the alternative, by the actual malice and/or intent to harm by … Sean Jacob Coats." *Id*., at ¶¶ 101 & 105.

This Court has repeatedly dismissed individual negligence claims against governmental employees where, as here, the pleadings simply allege malice or intent to harm without any plausible facts supporting such intentions. *Tarpein v. S.C. Dep't of Nat. Res.*, No. CV 1:23-5683-JFA-SVH, 2024 WL 4164707, at *4 (D.S.C. Apr. 30, 2024), *report and recommendation adopted,*

No. 1:23-CV-05683, 2024 WL 3633652 (D.S.C. Aug. 1, 2024) (finding that bare allegations that the governmental employee acted with the intent to harm and/or with malice, without further factual enhancement, is insufficient to overcome the SCTCA's employee immunity); *see also, e.g.*, *Wilson v. S.C. L. Enf't Div.*, C/A No. 4:22-02312, 2023 WL 6650108, at *7 (D.S.C. July 31, 2023) (finding the plaintiff expressly pled the employee-defendants were acting within the scope of their employment but failed to sufficiently state plausible facts indicating fraud, actual malice, intent to harm, or a crime of moral turpitude).

Plaintiff's allegations of gross negligence and recklessness cannot save their claims against Coats individually because these claims lack the requisite intent to avoid immunity. "[A]s this court has repeatedly held, … 'all of the SCTCA exceptions require a requisite element of intent,' an intent to harm, and '[c]laims for negligence ... lack such intent,' including claims for gross negligence." *Strickland v. Oconee Cnty. Sheriff's Off.*, C/A No. 8:19-3176, 2021 WL 4691776, at *11 (D.S.C. June 1, 2021), *report and recommendation adopted*, C/A No. 8:19-3176, 2021 WL 4145850 (D.S.C. Sept. 13, 2021); *Mosley v. Mueller*, C/A No. 1:19-2383, 2020 WL 5986220, at *6 (D.S.C. Mar. 24, 2020) (finding state law gross negligence claim failed to overcome SCTCA immunity because it necessarily lacked the element of intent), *report and recommendation adopted*, C/A No. 1:19-02383, 2020 WL 3638111 (D.S.C. July 6, 2020).

Moreover, in response to Coats's summary judgment motion, Plaintiff can present no evidence Defendant Coats acted with actual malice or with intent to harm the Decedent. ECF No. 46, at ¶¶ 5, 10, 96(g), 96(h), 101, & 105. When deposed, Plaintiff did not recognize Sean Coats's name, could not recount any discussions she had with him, and did not know of any role he played in this case. Ex. I, Plaintiff Depo., at 159:13-25 & 210:7-19.  Even if Coats failed to inform the scene commander that the resisting arrest warrants arose from the SPD's attempts to serve the

warrants on two prior occasions, such an omission cannot be said to result from actual malice or an intention to harm Holcomb.

Therefore, because Plaintiff failed to allege any facts suggesting Coats acted with actual malice or an intent to harm, and because all the evidence demonstrates that at all times relevant to this lawsuit Coats was acting within the scope of his official duties as a sheriff's deputy, the SCTCA's immunity shields Coats from every claim Plaintiff alleges against him. By operation of law the Spartanburg County Sheriff is properly substituted in place of Coats with respect to each such claim. § 15-78-70(a) & (c). Accordingly, Defendant Coats is entitled to summary judgment on the basis of statutory, employee immunity.

**II.     DEFENDANT COATS IS ENTITLED TO SUMMARY JUDGMENT FOR THE NEGLIGENCE CAUSE OF ACTION BECAUSE PLAINTIFF CAN NEITHER ESTABLISH A LEGAL DUTY NOR DEMONSTRATE PROXIMATE CAUSATION FOR HER ALLEGED DAMAGES.**

Even if Plaintiff could avoid the statutory immunity provided by the Tort Claims Act, she cannot meet the burden of demonstrating that Coats owed her a duty of care or proximately caused Mr. Holcomb's death. "A plaintiff, to establish a cause of action for negligence, must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *Grier v. Amisub of S.C., Inc.*, 397 S.C. 532, 537, 725 S.E.2d 693, 696 (2012). Gross negligence incorporates the elements negligence but with an added burden on the Plaintiff. As described by the South Carolina Supreme Court, "[g]ross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do. It is the failure to exercise slight due care." *Jinks v. Richland County*, 355 S.C. 341, 345, 585 S.E. 2d 281 (2003).

**A.    Because Deputy Coats was Acting Within the Scope of His Official Duties, the Public Duty Rule Bars Plaintiff's Negligence and Gross Negligence Causes of Action.**

The South Carolina Supreme Court, in *Doe v. Marion*, announced that "the court must determine as a matter of law, whether the law recognizes a particular duty. If there is no duty, then the defendant in a negligence action is entitled to a directed verdict." 373 S.C. 390, 400 (2007) (*citing Steinke v. S.C. Dep't of Labor*, *Licensing and Regulation*, 336 S.C. 373, 387 (1999)). This standard applies to Plaintiff's negligence and gross negligence claims.

Plaintiff's claims against Coats fail because she cannot establish that this Defendant owed her or her Decedent, as members of the public, a specific duty of care. "The 'public duty' rule presumes statutes which create or define the duties of a public office have the essential purpose of providing for the structure and operation of government or for securing the general welfare and safety of the public. Such statutes create no duty of care towards individual members of the general public." *Arthurs ex rel. Est. of Munn v. Aiken Cnty.*, 346 S.C. 97, 104, 551 S.E.2d 579, 582 (2001) (*quoting Summers v. Harrison Constr.*, 298 S.C. 451, 455–56, 381 S.E.2d 493, 496 (Ct. App. 1989)). "[A] Plaintiff alleging negligence on the part of a governmental actor or entity may rely either upon a duty created by statute or one founded on the common law." *Arthurs*, 346 S.C. at 104, 551 S.E.2d at 582.

Accordingly, Defendant Coats owed no duty to Plaintiff from which a claim for negligence could be predicated. Plaintiff failed to plead any particular statute or common law principle creating any duty.[5] Even had Plaintiff done so, under the public duty rule Plaintiff bears the burden

---

[5]    When a statutory predicate is alleged, courts apply a six-part test. *Arthurs*, 346 S.C. at 106, 551 S.E.2d at 583. Because Plaintiff is not basing her tort claims on a statutory duty, the analysis ends without reference to that test.

of demonstrating the existence of a special duty. Plaintiff's inability to meet this burden to show a special duty of protection is fatal to her tort claims against Defendant Coats.

**B.    Because Mr. Holcomb's Death Was Not the Foreseeable Consequence of Coats's Alleged Acts or Omissions, Proximate Cause is Absent.**

The essential thrust of Plaintiff's claim against Coats is that if he had "disclosed to Lt. Hawkins on scene that Mr. Holcomb was suffering a mental health crisis and [the] prior stand down orders from the SPD chain of command . . . [Hawkins] would not have escalated efforts to arrest him and Mr. Holcomb would not have been shot and killed inside his bedroom." ECF No. 46, at ¶ 93. However, even if she could demonstrate that the law imposed a duty on Coats to provide this information to Lt. Hawkins, Plaintiff cannot establish that these alleged omissions proximately caused the tragic outcome of February 2, 2023.

"Proximate cause requires proof of: (1) causation-in-fact, and (2) legal cause." *Wickersham v. Ford Motor Co.*, 997 F.3d 526, 533 (4th Cir. 2021) (*quoting Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 635 S.E.2d 97, 101 (2006)). "To establish causation-in-fact, plaintiffs must show that a defendant's tortious conduct was the 'but for' cause of their injuries." *Id.* Legal cause requires demonstrating the injury's foreseeability—that is, that the injury was a "natural and probable consequence[ ] of the defendant's act or omission." *Id.* Indeed, "[t]he touchstone of proximate cause in South Carolina is foreseeability." *Koester v. Carolina Rental Ctr., Inc.*, 313 S.C. 490, 443 S.E.2d 392, 394 (1994).

1.    *Plaintiff Can Prove Neither that Deputy Coats Knew Mr. Holcomb was in a Mental Health Crisis nor that the Scene Commander Lacked This Knowledge.*

There is no evidence that Coats was aware that Holcomb was experiencing a mental health crisis prior to serving the warrants on February 2, 2023. According to Coats, he "assume[d] by how he's resisted and acted and spit in his mom's face that it could have been something going on,

either drugs, and/or mental illness." Ex. B, Coats Depo., 62:7-63:5. As discussed above, Coats only prior interaction with Holcomb was more than two-years prior in October of 2020. He deposed that Mrs. Holcomb never told him of Holcomb's schizophrenia diagnosis. *Id*., 211:20-212:21. In their text exchange the week prior to this incident, Defendant Davis mentioned Holcomb's "mental state" in passing. Ex. D, at p. 1.

Moreover, there is abundant evidence that Holcomb's mental status was evident to any officer that spent a significant amount of time on scene on February 2nd. Plaintiff's own expert witness concedes as much.

> Q. So if anyone is on scene or they're outside of the room, they're going to know -- it's reasonable that they would understand that Holcomb had some sort of mental health problem, correct?

> A. I think that would be a fair conclusion…. I think it's fair to say that anyone who is exposed to big chunks of this encounter should probably be coming to the professional conclusion that this guy is not altogether sane.

Ex. G, Stoughton Depo., at 258:22-259:11.

It would be implausible to reach any other conclusion based on the numerous incident reports regarding the incident. Excerpts from four deputies on scene that day make clear that Holcomb's mental status was known to the responding officers.

> Deputy Featherstone:

> He identified himself as multiple different persons and spoke of executions and other acts of violence. He would frequently laugh loudly and speak of Nazis. He also stated that he would never surrender and that he would execute officers. He was also mumbling and speaking incoherently. … Holcomb's responses to the negotiators was erratic and did not make sense.
> Ex. J, Attachment 25 to SLED Report.

> Deputy Longshore:

> From my position inside the residence I could hear Mr. Holcomb repeatedly become agitated and yell at negotiators from inside the room, referring to himself as "Big Stone," and "Pilgrim." Mr. Holcomb spoke in a very erratic and unstable manner

cursing at officers, referring to himself at one point as an "executioner" and that we were all "dead and didn't know it." Mr. Holcomb referred to the negotiators as "Nazi's" and stated multiple times that there would be "no surrender." … Mr. Holcomb would go through what seemed like periods of quiet where he could be heard talking to himself, and periods of screaming at officers and negotiators.
Ex. K, Attachment 28 to SLED Report.

Deputy Tillinghast:

Heard the suspect threaten bodily harm to officers. Specifically, I heard the suspect reply to negotiators telling him that they wanted to end the incident without harming Mr. Holcomb. He replied saying "I don't care, I'm a killer, I am going to hurt y'all."
Ex. L, Attachment 29 to SLED Report.

Deputy Biggs:

During [the negotiations] I occasionally heard Darius tell deputies communicating with him that he would hurt them and would kill them. On several occasions he became extremely irate and began yelling and laughing in the room.
Ex. M, Attachment 30 to SLED Report.

2.    *It is Unforeseeable that Coats's Alleged Failure to Inform the Scene Commander of the Spartanburg Police Department's Prior Attempts to Serve the Warrant Would Cause Holcomb's Death.*

On February 9, 2023, Lt. Hawkins wrote in a statement to SLED agents that "the response would be different" had he known of SPD's prior "interaction" with Holcomb. Ex. N, Attachment 24 to SLED Report. However, Lt. Hawkins also reported that while on scene he read the "two resisting arrests warrants to the suspect's sister." *Id*. As is apparent from the face of the warrants, they arose from SPD officers Smith's and Davis's interactions with Holcomb the prior week on January 27 and 28. Ex. A. It is understandable that Lt. Hawkins would entertain doubts, in hindsight, about the events on February 2nd. However, the scene commander's opinion of what might have been cannot be credited with supplying proof that it was foreseeable that Coats's alleged omission would be the cause of Holcomb's death.

Page 16 of 19

### IV.     COATS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIM FOR ASSAULT AND BATTERY.

Plaintiff alleges[6] that Coats "intentionally engaged in conduct … that was carried out in such a manner as to place Decedent Darius Holcomb in reasonable apprehension of bodily harm." ECF No. 46, at ¶ 132. Under South Carolina law, "an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671-72 (D.S.C. 1995) (*quoting Jones v. Winn– Dixie Greenville, Inc.,* 456 S.E.2d 429, 432 (Ct. App. 1995)). A law enforcement officer who uses reasonable force[7] in effectuating a lawful arrest is not liable for assault or battery. *See Moody v. Ferguson,* 732 F.Supp. 627, 632 (D.S.C.1989). Defendant Coats's actions in attempting to arrest Holcombe were lawful because he was acting pursuant to facially valid warrants.  Therefore, Defendant Coats's action in arresting the Plaintiff cannot constitute assault or battery, and he is entitled to summary judgment on those causes of action.

When deputies first arrived to serve the three outstanding warrants, Mr. Holcomb threatened to kill Deputy Coats. Ex. B, Coats Depo., at 71:19-20. *See* S.C. Code Ann. § 23-15-40 (requiring the sheriff or his deputy "to serve, execute and return every process, rule, order or notice issued by any court of record in this State or by other competent authority."). As the incident went

---

[6]     It is not clear that Plaintiff intended to make this assault and battery claim against Defendant Coats, who is not named in the heading under "Sixth Cause of Action."  ECF No. 46, at p. 26. The "intentionally inflicted physical contact" alleged includes only the deployment of the K-9. Id., at ¶ 132. Coats did not have physical contact with Holcomb until after he was in custody and then only when he attempted to treat Holcomb's injuries.

[7]     Of course, if a police officer uses excessive force, or "force greater than is reasonably necessary under the circumstances," he may be liable for assault or battery. *Roberts*, 902 F. Supp. at 671 (*citing Moody*, 732 F.Supp. at 632). However, in this lawsuit Plaintiff does not allege that Defendant Coats used excessive force.

on, Holcomb made additional threats to kill the deputies who were present. (Id. at 74:23-24) This led Coats to believe Holcomb had committed the additional crimes of resisting arrest and threatening the life of a public official. (Id., at 78:15-17) *See* S.C. Code Ann. § 23-13-60 ("deputy sheriffs may for any suspected freshly committed crime, whether upon view or upon prompt information or complaint, arrest without warrant and, in pursuit of the criminal or suspected criminal, enter houses or break and enter them…").

Analyzing the related intentional tort of false arrest, the Fourth Circuit Court of Appeals has reiterated that an arresting officer may rightly rely on a facially valid warrant. "[T]here can be no claim for false arrest where a defendant is arrested pursuant to a facially valid warrant … [as] it is not the duty of the arresting officer to assess guilt or innocence, but merely to serve the warrant." *Dorn v. Town Of Prosperity*, 375 F. App'x 284, 288 (4th Cir. 2010) (following the South Carolina rule that there can be no claim for false arrest where a person is arrested pursuant to a facially valid warrant). The court added that "[a]n arresting officer is generally entitled to rely on a facially valid warrant in effecting an arrest." *Id*.

### CONCLUSION

Under state law, Sean Jacob Coats is immune to the tort claims alleged against him in Plaintiff's Amended Complaint. There is simply no evidence that on February 2, 2023, Coats was acting other than in his official capacity as a Spartanburg County Sheriff's Deputy. Plaintiff admits as much in her pleadings. Likewise, Plaintiff's pleadings fail to state any facts supporting her claims that Coats acted with malice or an intent to harm Darius Holcomb. Plaintiff will be unable to produce evidence from this record that Coats possessed the state of mind necessary to avoid his immunity to suit. Even if the Tort Claims Act did not immunize Coats from these claims, he owed no duty to Plaintiff for conduct in serving lawful warrants on Mr. Holcomb as a Spartanburg

County Sheriff's Deputy. Nor did his alleged acts or omissions proximately cause Plaintiff's injuries. Coats cannot be held liable for Darius Holcomb's tragic death. Accordingly, he is entitled to judgment in his favor and the dismissal of Plaintiff's claims against him with prejudice.

                                        **HOLCOMBE BOMAR, P.A.**


                                            *s/ Todd Russell Flippin*
                                        _____
                                        Todd Russell Flippin
                                        Federal I.D. No. 11753
                                        Post Office Box 1897
                                        Spartanburg, South Carolina 29304
                                        (864) 594-5300
                                        (864) 585-3844 (facsimile)
                                        tflippin@holcombebomar.com

                                        *Attorneys for Defendant Sean Jacob Coats*

Spartanburg, South Carolina

May 21, 2026